In the Matter of MORRIS CARL SCHNEIDKRAUT, an Attorney.

Second Department, December 15, 1930.

*Harold M. Kennedy*, for the petitioner.

*Charles H. Kelby*, for the respondent.

PER CURIAM. The respondent was admitted to the bar in 1919 and thereafter maintained an office in the borough of Brooklyn for the practice of the law. He seems to have had a large number of claims or cases in his office, aggregating something like 1,500, at about the time of the investigation of the present charges. Out of this mass he is charged with seven instances of failing to pay over to clients the sum or sums due them, and of appropriating such sums to his own use. In other words, he was charged with larceny. At about the time of the presentation of the charges he was indicted, together with a clerk of his named Krone, by the grand jury of Kings county. The charge was the taking of the identical money of one of these clients whose complaint is the basis of this disciplinary proceeding. Upon the trial of that indictment this entire group of seven complaints was the subject of inquiry. Both the respondent and Krone were acquitted. That, however, did not put an end to this proceeding. It is not essential in a disciplinary proceeding against a member of the bar that his unfitness to remain such shall imply criminality.

The learned official referee has found that the charges embracing the retention of clients' moneys by the respondent have been sustained by the evidence taken before him. At the same time, the referee has found as a fact that in every one of these instances, with the single exception of the case of one Izzy Schultz, the respondent actually gave to his clerk Krone the full amount of the moneys due to these clients with the direction to pay it over to them, and

the conclusion of the referee is not based upon the non-payment of the money by the respondent, but the non-payment of the money by the clerk, of which fact the respondent is found to have had no knowledge. The learned official referee based his finding of guilt upon the theory, expressed by him, that the attorney's duty was personally to see to it that his clerk was honest, and that this duty of paying over the money to a client could not be delegated to a clerk so as to absolve the attorney from his fiduciary obligation. This theory, if adopted, would make it exceedingly precarious for a lawyer to practice law unless he did business without clerical help or assistance. This is not the first instance where a lawyer has learned that he has had in his employ a dishonest clerk. The amounts complained of here aggregate in the entire seven cases not exceeding $900. Their smallness does not alleviate the duty of inflicting just punishment if the respondent were personally guilty. This fact is pointed out because, despite the very large number of cases in his office, the only charges against respondent of this nature are these seven instances. We adopt the referee's finding that the respondent's guilt was not personal, and are constrained to disapprove of his conclusion that the charges have been sustained by the evidence. The single case in which there was a finding of fact by the referee that the respondent personally dealt with the client is the case of one Izzy Schultz, who claimed that upon a settlement of his case for $650 he was paid by the respondent personally $175 in lieu of $325 to which he claimed to be entitled. Schultz's claim was that it was represented to him that the settlement was but for $350. The receipt signed by Schultz belies that claim. Moreover, we have read the testimony given by Schultz and conclude that it should not be accredited, as a matter of law. His dealings were not, in our opinion, with the respondent personally but were wholly with Krone. In *Matter of Solomon* (227 App. Div. 665, decided July, 1929, mem.), this court decided that charges against the respondent should be dismissed where the irregularities complained of were without the respondent's knowledge but were committed by the respondent's brother in the course of the respondent's law business.

As to the charge that the respondent brought an action for personal injuries on behalf of one Williams where the fact was that Williams was not a claimant but was only a witness to an accident for which suit was brought by the respondent as attorney, the charge showed that the commencement of such action was an inadvertent and unintentional act and that the action was discontinued promptly upon the discovery of the mistake. The referee's finding explicitly states that this action was the result of an error in the respondent's office.

There is also a similar charge in the case of one Esther Lummer, *i. e.,* the charge is that an action was brought on her behalf without authority. The case came to the respondent's office through an insurance agent with whom both respondent and Esther Lummer's husband were acquainted, and the fact is that Lummer asked the insurance agent to recommend some attorney to take care of this claim, the insurance agent in turn causing his secretary to write the particulars of the claim to the respondent. The action was brought, but immediately upon learning that another attorney had brought an action for Esther Lummer the respondent promptly discontinued this action. It was found by the referee that Lummer authorized the insurance agent's letter to the respondent, and that his bringing of the action was by the authority of the husband. Nothing appears under this charge which could form the basis of complaint.

It was also charged that actions were brought by the respondent on behalf of one Pocchia for personal injuries when the fact was that Pocchia had suffered only property damage to an automobile that was in a collision. Only one action was commenced, and in that case there was actually some personal injury. This was so found by the referee, as well as the further finding that no moneys were collected by the respondent on account of any one of Pocchia's claims. This charge should not be the basis of any finding inimical to the respondent.

It is next charged that the respondent brought actions in the Supreme Court when the Municipal Court would have afforded an adequate forum, and that his motive in bringing these actions in the Supreme Court was the greater likelihood of settlements of the causes of action by casualty companies representing defendants. The number of actions so brought is not stated in the findings, nor is there any finding of fact presented by the petitioner or the respondent bearing upon this subject of actions so brought in the Supreme Court instead of in the Municipal Court. But the learned official referee, in his opinion, found the respondent guilty of the charge of bringing these suits in the Supreme Court. He, however, has said nothing further on the subject. Just exactly what was the guilt incurred must, therefore, be spelled out from the charge which stated the motive of the respondent in bringing some personal injury actions in the Supreme Court when the jurisdiction of the Municipal Court furnished an adequate remedy, that motive being the more probable settlement of the claims. In this respect, we are of opinion that the respondent should not have done this. We do not mean to imply that the mere bringing of an action in the Supreme Court when it could just as well have been brought

in an inferior court is in and of itself censurable. It becomes so however, when the motive is considered, and in this particular we are of opinion that the respondent is subject to censure.

Lastly, there is the charge that the respondent refused to aid the inquiry conducted by Mr. Justice FABER whom this court designated to inquire generally into the subject of "Ambulance Chasing;" and it is found that this omission upon the part of respondent was his refusal to answer many of the questions propounded to him while he was being examined as a witness before Mr. Justice FABER upon the ground that "he might be incriminated" by his answers to the said questions. The learned official referee found that respondent's assertion of privilege "was a mere pretense" and that there was a willful impeding and thwarting of the inquiry by the respondent's refusal to answer. In the findings made upon the respondent's request, we find a quotation from the record before Mr. Justice FABER which, in brief, shows that the respondent, after considerable of his examination had been completed, took the ground that he honestly believed that he was about to be subjected to criminal prosecution. At least, that is the substance of the ground taken by the respondent in his refusals to answer. As a matter of fact, as already pointed out, criminal prosecution did follow. It was also found by the learned official referee that in the hearing of the present charges the respondent made no claim of privilege and did, as a matter of fact, answer all questions which were propounded to him. In the circumstances here presented, we think there was no justification for the finding that the position assumed by the respondent before Mr. Justice FABER was intended to thwart or impede that inquiry, and that the privilege asserted had a substantial and genuine basis. The conclusion to which we have come is that the charges should be dismissed with the exception of the one involving the bringing of actions in the Supreme Court that he knew should have been brought in the Municipal Court, and for that act we are of opinion that the respondent should be and hereby is censured.

LAZANSKY, P. J., RICH, KAPPER and HAGARTY, JJ., concur; CARSWELL, J., concurs in result.

Charges dismissed with the exception of the charge involving the bringing in the Supreme Court of actions that respondent knew should have been brought in the Municipal Court, for which the respondent is hereby censured.