(No. 36419.—

IN RE J. ROY BROWNING, Attorney, Respondent.

*Opinion filed November 30, 1961.—Modified on denial of rehearing January 22, 1962.*

484

J. R. CHRISTIANSON, of Chicago, *amicus curiae*.

DON M. PEEBLES and WARREN W. BROWNING, both of Chicago, for respondent.

Per CURIAM: The Committee on Grievances and the Board of Managers of the Chicago Bar Association, as Commissioners of this court, have recommended the disbarment of the respondent, J. Roy Browning, an attorney, on two charges of misconduct, and he has brought the record to this court for review.

Each of the charges relates to activities of Orville E. Hodge, formerly Auditor of Public Accounts, who embezzled substantial sums of money from the State of Illinois. Count I is concerned with a bill, or statement, for

legal services rendered, which the respondent delivered to Hodge, as Auditor of Public Accounts, in June of 1956. The statement was in the amount of $15,000, and it purported to cover legal services rendered and expenses incurred during the period from June 1, 1954, to August 31, 1955. The complaint charged that the respondent had never performed the services or incurred the expenses described in the statement, and that "in fact, said statement was entirely fictitious and was prepared and presented to the State of Illinois at the request of Orville E. Hodge for the purpose of serving as an invoice or a statement for a fictitious voucher issued on or about September 12, 1955, by Orville E. Hodge, payable to Roy Browning in the sum of $15,000." The count concluded with the allegation that the respondent knew that he had not performed the services and that no money was owed to him, and "that he was conspiring with the said Orville E. Hodge to make evidence to further the perpetration of a fraud theretofore practiced upon the State of Illinois" by Hodge.

The respondent's answer put in issue the factual allegations of the complaint. It admitted that he had delivered the statement to Hodge, but alleged that he had performed the services and incurred the expenses described in the statement, and that he had not received payment for them. It also alleged that the respondent had no knowledge, except from newspaper reports, of the issuance of the voucher of September 12, 1955, payable to him in the sum of $15,000, on which his name was endorsed in typewriting, until a photostatic copy of the warrant was exhibited to him when he appeared before the Sangamon County grand jury in July of 1956.

After the complaint and answer were filed, the respondent was indicted by the grand jury of Cook County as accessory after the fact to the crime of embezzlement of $15,000 from the State of Illinois by Hodge. When this indictment was tried before a judge of the criminal court

of Cook County, the defendant was found not guilty at the conclusion of the People's case.

Thereafter the respondent filed a motion before the Grievance Committee to dismiss count 1 of the complaint upon the ground that "the acquittal in the criminal case was conclusive upon the Commissioners and the matter could not be the subject of further inquiry by them." This motion was denied, and the respondent then filed an answer which reaffirmed his original answer and added as an affirmative defense that he had been tried on the merits and acquitted of the same offense in the criminal court of Cook County.

In support of the allegations of the complaint, Albert E. Jenner, Jr., and John S. Rendelman, both members of the bar of this court, were called as witnesses. Mr. Jenner had been appointed as a special assistant Attorney General to represent the Illinois Budgetary Commission in an investigation into Hodge's activities. Mr. Rendelman was also appointed as a special assistant Attorney General, to assist Mr. Jenner in the investigation.

These witnesses testified to conversations they had with the respondent in the fall of 1956. The respondent told them that at the request of Hodge, he prepared and submitted the attorney's fee statement to support the $15,000 warrant which Hodge told him he had issued in September, 1955, in respondent's name. The respondent also told them that at the time he issued the statement he had no money coming from the State of Illinois, had rendered no services for the fees set forth in the said statement, and that the statement was fictitious. The respondent said that in the latter part of June of 1956, he had received a telephone call from Hodge; that Hodge was distraught and said that he was in trouble; that he had issued a warrant dated September 12, 1955, in respondent's name and would appreciate it if respondent would prepare an attorney's fee statement to support the warrant; that respondent hesitated to prepare the requested fee statement because he had no money coming

from the State, but because of his great friendship for Hodge, he decided to, and did, prepare the statement Hodge had asked for. Respondent also told them that Hodge came to Chicago and met respondent and told respondent that in a moment of stress he had issued four fraudulent State warrants, one of which, dated September 12, 1955, was payable to the respondent in the amount of $15,000, and that he needed to have supporting statements from the payees of these warrants; that after Hodge had cried and "carried on" at great length and said that he would reimburse respondent for the $15,000, and after Hodge had said that he did not think that respondent had received as much compensation as was warranted for the many favors and services he had rendered to Hodge, respondent reluctantly agreed to prepare the statement, and delivered it to Hodge.

This testimony was undisputed. The respondent put in evidence the record of his acquittal in the criminal court, and offered the testimony of numerous character witnesses. But he did not testify, and he offered no evidence in support of the denials in his answer. His defense to count 1 rests on legal, rather than factual grounds. It "is that he was acquitted in the Criminal Court of the same offense as charged in the complaint, and that this fact is a complete bar to the charges. (*People* v. *John,* 212 Ill. 615; *In re Pontarelli,* 393 Ill. 310; *In re Patlak,* 368 Ill. 547.)" This contention requires an analysis of the circumstances under which the respondent was acquitted, and of the *John* case upon which the contention is based.

On the defendant's trial upon the indictment which charged him as accessory after the fact to the crime of embezzlement of $15,000 by Hodge, the trial judge refused to admit in evidence a certified copy of the record of Hodge's conviction, and sustained Hodge's refusal to testify upon the ground of self-incrimination. He then entered a finding of not guilty at the close of the State's case, on the

ground that the State had failed to prove the commission of a felony by Hodge. The record in the criminal case makes it entirely clear that the finding of not guilty was based upon a failure to establish the principal crime, and not at all upon an evaluation of the respondent's conduct. That potential issue was not reached and was not decided.

*People ex rel. Deneen* v. *John,* 212 Ill. 615, upon which the respondent's defense to count 1 rests, arose on an information for disbarment which charged John, an attorney, with the fraudulent conversion of money entrusted to him by his client. He had previously been found not guilty when he was tried upon an indictment that charged him with embezzlement of the same sum from the same client. In its opinion this court said: "We are of the opinion that the judgment of the criminal court of Cook county acquitting the respondent of the charge of having embezzled the funds collected by him as an attorney at law for said Elise Wasserman should be held to be a bar to this proceeding. In *People* v. *Comstock,* 176 Ill. 192, leave was sought to file an information in this court for the disbarment of Comstock on the ground that he had induced a witness, by the payment of money, to swear fasely in a suit before that time pending in the circuit court of Fulton county. It appeared from the information that the respondent had been indicted by the grand jury of said county for subornation of perjury for inducing said witness to swear falsely and that said indictment was then pending in the circuit court of Fulton county for trial, and it was held, the respondent being under indictment for said offense, the proper place to investigate the question of his guilt was in the court where said indictment was pending, and not in this court, and the information was not permitted to be filed. We think the logical conclusion to be drawn from the decision in that case is, that a judgment of conviction or acquittal upon the merits upon a trial on an indictment will ordinarily be treated by this court as conclusive of the guilt or innocence of an attorney at law

upon a subsequent trial upon information for disbarment for the same offense. The foregoing seems to be the rule in all the courts of this country, unless special reasons, such as lapse of time, proof of reformation or other facts are shown, which, in the view of the court, should relieve the attorney from the force of a judgment of conviction."

It is clear that the prosecution of the present disciplinary case against the respondent is not barred by anything that was held or said in the *John* case. The qualified statement in that case as to the treatment that will "ordinarily" be accorded to a prior acquittal was made with reference to an acquittal after a trial upon the merits. The criminal charge in that case was based solely upon the conduct of the attorney, and the acquittal was a direct determination of the character of that conduct. The criminal trial relied upon in the present case never reached the state of a determination on the merits with respect to the respondent's conduct. Such a determination was precluded by the ruling of the trial judge that Hodge's guilt of the crime of embezzlement, to which he had pleaded guilty in another court, was not properly established. The correctness of that ruling is not before us, and we express no opinion concerning it. For present purposes, it is sufficient that the finding of not guilty in the criminal case against the respondent is not the kind of acquittal upon the merits which, in the language of the *John* case, will ordinarily be treated as conclusive.

The Commissioners properly found the respondent guilty upon the charge contained in count I of the complaint.

Even though the present proceeding is not controlled by the *John* case, the *amicus curiae* nevertheless asks us to overrule that case, insofar as it bears upon the relation between an acquittal on the merits in a criminal case and a subsequent disciplinary proceeding based upon the same conduct. He points out that the single decision cited in the *John* case does not support the conclusion reached, that the conclusion reached was not in accord with the authorities

as they existed at that time, and that over the intervening years other courts have not accepted that conclusion.

Because of this court's responsibility for the maintenance of the standards of the legal profession, we think it is appropriate to reconsider the ruling in the *John* case. It is obvious that *People ex rel. Chiperfield* v. *Comstock,* 176 Ill. 192, the only case cited in the opinion in the *John* case, did not require the pronouncement which the court made. Nor was the proposition there announced "the rule in all the courts of this country." We have been referred to no case that has so held in the absence of a controlling statute, and we have found none. At the time the *John* case was decided, some courts had held, (*People ex rel. Colorado Bar Ass'n* v. *Mead* (1902), 29 Colo. 344, 68 Pac. 241; *In re an Attorney* (1881), 86 N.Y. 563), and others had intimated (*Ex Parte Wall* (1883), 107 U.S. 265, 280, 27 L. ed. 552; *In re Davies* (1880), 93 Pa. St. Rep. 116), that an acquittal did not bar a disciplinary proceeding. During the years that have followed the *John* case, other courts have considered the problem, and have similarly concluded that a former acquittal does not preclude a disciplinary proceeding. *In re Lincoln* (1929), 102 Cal. App. 733, 283 Pac. 965; *People ex rel. Colorado Bar Ass'n* v. *Thomas* (1906), 36 Colo. 126, 91 Pac. 36; *In re Heinze* (1951), 233 Minn. 391, 47 N.W.2d 123; *In re Richards* (1933), 333 Mo. 907, 63 S.W.2d 672; *In re Thresher* (1906), 33 Mont. 441, 84 Pac. 876; *Re Schneidkraut* (1930), 231 App. Div. 109, 246 N.Y.S. 505.

The reasons that support the result that other courts have reached are convincing. The purpose of a criminal prosecution is not the purpose of a disciplinary proceeding. As this court has pointed out, punishment is not the object of a disciplinary proceeding. "The object of this inquiry is to determine whether respondent is a proper person to be permitted to continue in the practice of an honorable pro-

fession." (*People ex rel. Chicago Bar Ass'n v. Meyerovitz,* 278 Ill. 356, 367; *cf.* 1961 U. Ill. L.F. 307.) In a criminal case the accused is surrounded by procedural safeguards, such as the burden of proving guilt beyond a reasonable doubt and the privilege against self-incrimination, that are not appropriate to a civil inquiry to determine whether or not the professional conduct of a lawyer has conformed to the standards of his profession. Those standards, moreover, are not the minimal standards of the criminal law that determine whether or not a transgressor is to be punished by imprisonment.

Upon reconsideration, therefore, we are of the opinion that the statement in *People ex rel. Deneen v. John,* 212 Ill. 615, as to the effect that is ordinarily to be given to the acquittal of an attorney upon a criminal charge should not be adhered to. The fact that a judgment of conviction for a criminal offense involving moral turpitude is given a conclusive effect (*In re Eaton,* 14 Ill.2d 338; *In re Carr,* 377 Ill. 140; *In re Needham,* 364 Ill. 65; *People ex rel. Chicago Bar Ass'n v. Meyerovitz,* 278 Ill. 356; *People ex rel. Deneen v. Gilmore,* 214 Ill. 569; *People ex rel. Johnson v. George,* 186 Ill. 122,) does not militate against this result. Such a judgment is entered only after guilt has been acknowledged by a plea of guilty, or has been proved beyond a reasonable doubt upon a trial at which the respondent has had the benefit of all the safeguards which the criminal law affords one accused of crime. And such a judgment establishes that the respondent has been guilty of conduct that falls far below the standards required of members of the legal profession.

But because an acquittal does not automatically bar a disciplinary proceeding, it does not follow that such a proceeding is mandatory whenever a criminal charge is followed by an acquittal. A careful evaluation of the circumstances of each case should precede the institution of such

a proceeding. And if disciplinary action is taken, the significance of the acquittal is again a matter for determination in each case.

Count 2 of the complaint concerns a transaction in which the respondent was retained to represent Union Electric Company of St. Louis, a Missouri public utility. On April 15, 1955, Hodge, who was Auditor of Public Accounts at the time, called the respondent to ask whether he would like to represent Union Electric in "expediting" the passage of a bill through the Illinois legislature. Henry Driemeyer, attorney for Union Electric, testified that on April 21 the respondent met in Hodge's office with Mr. Driemeyer and H. C. Williamson, the company's real-estate and tax officer. They told respondent that his fee would be $35,000, payable $7,500 immediately, and the rest in installments as the bill proceeded through the legislature—$5,000 when it passed the Senate, $5,000 when it passed the House, and the remaining $17,500 when it was signed by the Governor. The purpose of the bill was to authorize the company to transact business in Illinois. Mr. Williamson gave respondent a check for $7,500 and the meeting ended.

Mr. Jenner and Mr. Rendelman testified that when they talked to respondent on October 31, 1956, they told him that they had in their files four checks drawn by Union Electric, payable to him, aggregating $35,000. The respondent said that he knew nothing about them, and that he had never been employed by Union Electric. Mr. Jenner testified that in a later conversation, on November 13, the respondent told of being called by Hodge, and of arranging a meeting with Mr. Driemeyer with respect to representing that company. Thereafter, respondent said, he went to the meeting at Hodge's office and the representatives of Union Electric retained him, and gave him the $7,500 check. The respondent said that after the others had left, Hodge asked him to remain, said that he was in severe financial straits and in need of money, and asked respondent to give him

the $7,500 check. Respondent acquiesced and endorsed the check because "Hodge had, over a period of time, been very kind to him." Respondent said that he returned to Chicago, obtained a copy of the bill and prepared himself to testify in its behalf. He heard nothing further about it. He said that he called Hodge repeatedly to ask what he should do, but he was never able to reach Hodge. He did not, however, call Union Electric or its attorneys. As the bill progressed through the legislature, three more checks were issued by Union Electric, making up the balance of the $35,000. They were delivered to Hodge's office in Springfield in sealed envelopes addressed to the respondent. Each was endorsed with respondent's name. In his conversation with Mr. Jenner respondent denied that he had endorsed them, or had ever seen them, and it is not contended that he did.

Count 2 concludes with the charge that "respondent was involved in a transaction whereby he was using his position as an attorney at law of the State of Illinois for improper purposes and was using the proceeds of the check that was delivered to him and intended to use the proceeds of the checks that were to have been delivered to him to split with a person not an attorney at law but in fact an elected officer of the State of Illinois." As to this count the Commissioners found that "respondent used his position as an attorney for improper purposes, participating in a scheme where money, ostensibly paid as legal fees, was intended to be paid and was, in fact, paid to an elected State officer for other purposes. The Commissioners find that respondent, in lending himself to such scheme and transaction, was guilty of conduct tainted with moral turpitude."

The respondent contends vigorously that count 2 did not state a definite theory which was suported by clear and convincing proof as to the wrongful act charged and the motive with which it was done. He says: "Admittedly, Respondent was retained in the matter, rendered no substantial service, and was not called upon to perform services.

Under these circumstances it is commendable that Respondent made no demand for the balance of his fee, even though, by reason of the fact that the legislation passed, it was due and payable to him. The finding that he made no inquiry of the details of the service he was to perform is meaningless. The Record shows that Respondent was retained because he was experienced in this field and the client in no way sought to direct his activities. The Record further shows that Respondent prepared himself to perform his employment, but that he was never called upon to perform any services before the Legislature passed the bill. * * * This act of the Respondent in giving Hodge the money is certainly no proof of wrongdoing on his part. About all this shows is that Respondent was generous and willing to help a friend in apparent need."

These inferences, which the respondent would have us draw, are not the only ones that flow from this record, and the question to be determined is whether there are other inferences, so natural and probable as to amount to clear and convincing proof of misconduct, which support the finding of the Commissioners. We turn, therefore, to an analysis of the circumstances shown by the record.

The fee was contingent, and contingent fees for services as a lobbyist are contrary to public policy and void. (*Crichfield* v. *Bermudez Asphalt Paving Co.* 174 Ill. 466, 479.) As stated in 12 I.L.P., p. 336: "All agreements whose object or tendency is improperly to interfere with or influence legislative action, either by congress, the General Assembly, or by a city council or other like body, are contrary to public policy and void. Thus contingent fee contracts for procuring favorable legislation are void since such a contract tends necessarily to influence legislation improperly, for the promise of payment of a contingent fee is a direct and strong incentive to the exertion of not merely personal but sinister influence of the legislative body." The policy thus earlier

announced was formally enacted into law after these transactions had taken place: "No person shall be employed to promote or oppose the passage of legislation for a compensation dependent in any manner upon the passage or defeat of any proposed legislation or upon any other contingency connected with the action of the legislature, or of either branch, or of any committee thereof." Ill. Rev. Stat. 1959, chap. 63, par. 110.

Not only was the fee contingent; its amount was extraordinary in view of the work to be done. The respondent was to have nothing to do with the preparation of the bill. It had already been prepared. Only a little more than two months of the legislative session remained when the respondent was retained. Despite the fact that the payment of this substantial fee was contingent upon results that he had been retained to bring about, respondent did absolutely nothing to assist in the passage of the bill. He made no attempt at any time to communicate with his client. Instead, he attempted to get in touch with Hodge. His answer to the complaint admitted that immediately after he turned over the $7,500 check to Hodge, Hodge advised him to do nothing more until he received further instructions from Hodge. After the bill was passed and approved, he made no inquiry as to the balance of his fee. These circumstances are hardly consistent with a good faith attorney-client relationship.

It is true, as the respondent emphasizes, that he received nothing from this transaction except the retainer fee of $7,500, which he immediately gave to Hodge when Hodge requested it. This circumstance itself is hardly to be characterized as a commonplace occurrence. The defendant has offered no explanation of this or any other part of the transaction. When first confronted, he denied any connection with the transaction, and said that he had never been employed by Union Electric. What was said with respect to an attorney's failure to answer a disciplinary charge in *In re*

496

*Sanitary District Attorneys,* 351 Ill. 206, 256, is applicable here to respondent's failure to attempt any explanation of his conduct: "An information in a case such as this is a direct call upon an attorney by the court that he speak. The choice of silence is not open to him if he is to remain an officer of the court." *Cf. In re Heirich,* 10 Ill.2d 357, at 388-9, 406-7.

It is true that the record does not reveal the exact nature of the "improper conduct" charged in the complaint and found by the Commissioners, but the complaint identified the exact transaction that was called in question, and stated the relevant circumstances to the extent that they could be known to anyone who was not a participant. In a disciplinary proceeding neither the Commissioners nor this court are required to be naive in the appraisal of an attorney's conduct, particularly when the respondent himself has failed to furnish any explanation of conduct that on its face is most unusual. We hold, therefore, that the Commissioners properly found the respondent guilty of the charges contained in count 2.

The Commissioners recommended disbarment, and we have carefully considered that recommendation. During more than 35 years of practice, no complaint with respect to respondent's professional conduct was ever made. He made no financial profit from either of the transactions involved, and the record suggests that his conduct was attributable to friendship for Hodge rather than to the desire for financial gain. That fact does not make his conduct less reprehensible, but it does have a bearing upon the degree of discipline that is appropriate. Upon careful consideration, we are of the opinion that the respondent should be suspended from the practice of law for a period of 3 years.

*Respondent suspended.*