**In the Matter of Julius Lucius ECHELES, an Attorney.**

**No. 17415.**

United States Court of Appeals, Seventh Circuit.

June 5, 1970.

Thomas A. Foran, U. S. Atty., Chicago, Ill., for appellant; John Peter Lulinski, Michael B. Nash, Wayne R. Cook, Asst. U. S. Attys., of counsel.

Albert E. Jenner, Jr., Thomas P. Sullivan, Russell J. Hoover, Chicago, Ill., for appellee; Jenner & Block, Chicago, Ill., of counsel.

Before FAIRCHILD and KERNER, Circuit Judges, and STECKLER,[1] District Judge.

STECKLER, District Judge.

This is an appeal from the dismissal of a disciplinary proceeding against Julius Lucius Echeles, a member of the bar of the United States District Court for the Northern District of Illinois.

The petition for disciplinary action was filed by the United States Attorney pursuant to Rule 8 of the General Rules of the District Court.[2]

---

1. William E. Steckler, Chief Judge of the United States District Court, Southern District of Indiana, is sitting by designation.

2. Rule 8, General Rules of the United States District Court, Northern District of Illinois, Eastern Division, reads: "Discipline of Attorneys; Reinstatement. The Executive Committee may order the disbarment or suspension of any attorney who (1) has been convicted of a felony in any federal, state or territorial court, or (2) has been disbarred or suspended by any such court. After notice and opportunity to respond, the judges of the Executive Committee may order the disbarment or suspension of an attorney who (1) has resigned from the bar of another

The primary issue presented is whether the three-judge Executive Committee of the District Court erroneously construed this Court's opinion in In re Echeles, 374 F.2d 780 (7th Cir. 1967). By its order of October 7, 1968, the Committee concluded that it had no alternative under this Court's interpretation of the District Court's existing rules to dismissing the proceedings against the respondent, although it found that the respondent's pattern of conduct obviously fell far short of compliance with his admission oath. In re Echeles, 291 F. Supp. 307 (N.D.Ill.1968).[3]

Two supplemental issues are presented by the respondent's motion to dismiss the appeal, on the grounds that the United States Attorney has no standing to prosecute the appeal, and that the notice of appeal was filed by the United States Attorney on behalf of the United States of America. In support of the latter ground, respondent states that the United States of America was never a party to the proceeding in the District Court; that it did not attempt to intervene in the proceeding, nor did it seek authorization to take an appeal from the decision of the Executive Committee.

Before considering the substantive issue raised by this appeal, the United States' standing to appeal and the United States Attorney's standing to prosecute the appeal will be determined.

 Preliminarily, it would be well to note that disbarment and suspension proceedings are neither civil nor criminal in nature but are special proceedings, sui generis, and result from the inherent power of courts over their officers. Such proceedings are not lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent. They are not for the purpose of punishment, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice. Ex parte Wall, 107 U.S. 265,

court, or (2) has been convicted of a misdemeanor, or (3) is found to have committed acts of professional misconduct prejudicial to the orderly administration of justice such as fraud, deceit, malpractice or failure to abide by the provisions of the Canons of Ethics of the American Bar Association.

(a) The Executive Committee, upon concluding that charges presented to it against an attorney are of sufficient weight, and where an independent investigation is deemed necessary, shall refer the investigation thereof to the United States Attorney for this district or to the grievance committee of the Chicago Bar Association, if the respondent resides or has his office in Chicago, or to the grievance committee of the Illinois State Bar Association, and the investigative report shall be submitted to the Executive Committee.

(b) Where further action is warranted, a statement of the charges shall be served upon the respondent personally or by mail. The respondent shall submit to the Chief Judge three copies of his answer thereto within 20 days, unless additional time is granted by the Chief Judge. Upon failure to so respond, the Executive Committee may enter an order of disbarment or suspension.

(c) After an answer has been filed, but before the entry of an order of disbarment or suspension, the Executive Committee may set the matter for a hearing before it. Notice of such a hearing shall be mailed not less than 15 days prior thereto. The basis of any order of disbarment or suspension shall be set forth.

(d) The hearing and documents relating to such proceedings, with the exception of an order of disbarment or suspension, shall not be made public without consent of the respondent.

(e) Upon motion, the Executive Committee may reinstate any attorney who has been disbarred or suspended.

(f) Upon the entry of an order of disbarment or suspension, the clerk shall transmit a certified copy of the order and the basis therefor to the clerk of the state court where such attorney is admitted.

3. Thus, the Memorandum of the Executive Committee stated that, "We are persuaded * * * that we have no alternative, under the interpretation of our existing rules by the Court of Appeals, to dismissing the pending proceeding against the respondent." 291 F.Supp. at 309.

2 S.Ct. 569, 27 L.Ed. 552 (1882). Thus the real question at issue in a disbarment proceeding is the public interest and an attorney's right to continue to practice a profession imbued with public trust. In re Fisher, 179 F.2d 361 (7th Cir. 1950), cert. denied sub nom. Kerner, et al. v. Fisher, 340 U.S. 825, 71 S.Ct. 59, 95 L.Ed. 606 (1950).

In the federal system there is no established uniform procedure for suspension and disbarment proceedings in the district courts; the matter is left to the individual judicial districts. Here the District Court appropriately has adopted a local rule defining the grounds upon which suspension or disbarment of an attorney may be had and the procedure to be followed. However, the essential requirements of any such proceeding are notice and the opportunity to be heard. In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1967).

We agree with the respondent that the United States of America was not a party to the proceeding below, and therefore has no standing to bring this appeal. Aside from the notice of appeal, nothing in the record indicates that the United States of America as a party has an interest in the matter. However, while technically inaccurate, we regard the form of the notice in the name of the United States of America to be nonprejudicial under the circumstances. Any other conclusion would unnecessarily exalt form over substance.

The second supplemental issue concerns the right of the United States Attorney himself to appeal the decision of the Executive Committee, with its permission.

Both the respondent and the United States Attorney have cited this Court's opinion in In re Teitelbaum, 253 F.2d 1 (7th Cir. 1958), as support for their opposing contentions in regard to the United States Attorney's right to appeal. Respondent contends that Teitelbaum precludes the instant appeal, while the United States Attorney reads Teitelbaum as permitting an appeal when, as here, permission is given.

In Teitelbaum it was held that where the United States Attorney requested and received permission to file with the District Court a petition for disbarment of an attorney, and the Court denied the petition for disbarment, the United States Attorney had no standing as a party or otherwise to file a notice of appeal to this Court. It was noted, however, that the United States Attorney made no request of the District Court for permission to prosecute the appeal nor had the District Court authorized the appeal. The United States Attorney acted on his own authority. Such is not the case in this appeal. Here the District Court initially requested the United States Attorney to present evidence before the Executive Committee in the disciplinary proceedings, and thereafter on entering its order dismissing the proceedings, authorized the United States Attorney to continue in the matter. On October 7, 1968, the day the Executive Committee entered its order dismissing the proceeding, the presiding member of the Committee, the Chief Judge of the District Court, authorized the United States Attorney, by letter, to take any appeal from the Executive Committee's order he might determine to take.

As this Court noted in Teitelbaum, supra, "the responsibility of maintaining the integrity of the bar * * * rests in the Court itself." 253 F.2d at 2. Confronted with that responsibility, the Executive Committee, we believe, was persuaded to place itself in the anomolous position of ruling contrary to its findings because it was convinced by argument of respondent's counsel that it had no alternative under this Court's interpretation of the District Court's existing rules. We regard the Committee's authorization of the United States Attorney to appeal from such a result as a step toward fulfilling its responsibility to maintain the integrity of its bar—a step it obviously felt justified in view of the paradoxical result it believed this

Court's interpretation of its existing rules compelled.

Under these circumstances we conclude that the United States Attorney has standing to prosecute the appeal.

The history of Julius Lucius Echeles leading to the substantive issue presented by this appeal is thoroughly documented in the opinions of this Court and the District Court below. Respondent was indicted on October 19, 1952, and charged with using influence to obtain positions for various persons in the United States Post Office. After a trial by jury respondent was convicted in 1954 on all thirteen counts of the indictment. Conviction on nine of these counts was later affirmed by this Court. United States v. Echeles, 222 F.2d 144 (7th Cir. 1955), cert. denied, 350 U.S. 828, 76 S.Ct. 58, 100 L.Ed. 739 (1955).

Respondent entered a federal penitentiary where he served nine months until parole was granted in August 1956. Prior to entering prison, respondent filed a motion in the Supreme Court of Illinois to strike his name from the roll of attorneys of that state. The motion was allowed and his name was stricken. No such motion was filed in the United States District Court.

At that time, as at the time of the order from which the present appeal was taken, conviction of a felony was grounds for disbarment under the rules of the District Court. No disbarment proceedings were commenced either in the District Court or in the courts of Illinois.

Following his release from prison in 1956, respondent filed a petition in the Supreme Court of Illinois requesting reinstatement to the active roll of attorneys of the State of Illinois. The petition was granted. In March 1959 respondent presented a petition in camera and without notice to one of the judges of the District Court, other than the judge before whom he was tried, wherein he represented that he had been reinstated to the roll of active attorneys of the State of Illinois and requested an order that the fact of his reinstatement be spread of record so that there would be no question of his right to practice before the District Court. The order was granted in chambers.

In September 1963 respondent was indicted and charged with the subornation of perjury of a witness in a trial in the Court below and with obstructing and impeding the due administration of justice by endeavoring to induce witnesses to testify falsely. Following a trial by jury in which the respondent, his client, and a witness were codefendants, respondent, on June 23, 1964, was convicted on the four-count indictment. Based on these convictions, and pursuant to Rule 8, the Executive Committee entered an ex parte order suspending respondent from the practice of law before the District Court. Subsequently this Court reversed and remanded the conviction on the four-count indictment not on the merits—but solely on the ground that it was error to deny respondent a separate trial. United States v. Echeles, 352 F.2d 892 (7th Cir. 1965). On the basis of that reversal, respondent filed a motion before the District Court requesting that the ex parte suspension order be vacated. By order of May 17, 1966, the motion was denied without prejudice to its renewal upon conclusion of the still pending criminal case involving the 1963 indictment. The order denying the motion was appealed and reversed. In re Echeles, 374 F.2d 780 (7th Cir. 1967).

The Executive Committee, on April 29 and May 6, 1968, again took up the matter of respondent's qualifications, moral and otherwise, to continue to appear before the District Court. Respondent by this time had been retried on the 1963 indictment and a judgment of acquittal was entered pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. On October 7, 1968, the Executive Committee entered its Memorandum, Findings of Fact, Conclusions of Law and Order, from which the instant appeal arises. The Committee detailed the respondent's history substantially as here set forth.

The basis for the Executive Committee's conclusion that it had no alternative to dismissing the proceedings below, based upon this Court's opinion in In re Echeles, which we believe the Committee misinterpreted, can best be pointed up by quoting what the Executive Committee had to say of that opinion regarding the interpretation of the District Court's rules. The Committee stated:

"In its reversal of the suspension the Court of Appeals, 374 F.2d 780, reviewed the history of respondent's convictions and held that the 1954 conviction, 'no longer affords a foundation for summary suspension under (District Court) Rule 8 even though it fulfills the rule if taken literally.'

'* * * it would be unfair, after this lapse of time and in the light of intervening circumstances to treat the 1954 conviction as the sole foundation for any suspension or disbarment, let alone a summary or ex parte order under Rule 8.'

"The 1954 convictions are, however: '* * * surely relevant to his trustworthiness as an attorney, and may be properly considered, with other, more recent facts, in a disciplinary proceeding at any time * * *.'

"The court further held however, that because the recent 1964 convictions were reversed, those convictions also could not support a suspension order, even though that court in reversing those convictions, concluded that there was sufficient evidence to establish Echeles' guilt, finding error only in the trial court's refusal to grant respondent a trial separate from that of another defendant." 291 F. Supp. 308.[4]

The language used in an opinion must be read in the light of the issues presented. The Committee apparently failed to perceive that the issue on appeal in that case concerned the validity of the continuation of a summary suspension or disbarment, without a hearing, based on a reversed felony conviction.

This Court's opinion in In re Echeles, 374 F.2d 780 (7th Cir. 1967), did not nullify Rule 8 as applied to the respondent Echeles, nor did the opinion restrict any future disciplinary proceeding involving Echeles, should evidence of professional misconduct be established from the facts and circumstances surrounding the reversed 1964 conviction, *after notice and hearing*. The Court stated:

"We reverse the order appealed from because we consider it improper to continue the suspension without a fresh exercise of discretion after hearing and consideration of all relevant circumstances." 374 F.2d at 782.

The Court specifically took note of the difference in procedure authorized by Rule 8 between a summary disbarment or suspension for conviction of a felony, and a disbarment or suspension *after notice and hearing* for professional misconduct.

■ While perhaps in a disbarment proceeding when the conviction of a felony is relied on as the sole ground for disbarment, there may be plausibility for the view that an acquittal or reversal should be conclusive and preclude disbarment merely on that ground, yet as a general rule the mere acquittal of a crime will not be a bar to a suspension of the attorney's right to practice or his disbarment for unprofessional conduct, based upon the same acts or conduct involved. A conviction may be prevented by technicalities or other matters not determinative of the merits of the case. Accordingly, it is the general rule that the acquittal of an attorney in a prosecution for criminal acts constitutes no bar to suspension or disbarment proceedings based on the same acts and attendant

---

4. In alluding to this part of the Committee's Memorandum and Order, we are not unmindful that the Committee had before it the fact that the criminal prosecution on the reversed 1964 conviction was disposed of by judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure.

circumstances or conduct involved therein. In re Doe, 95 F.2d 386 (2d Cir. 1938); see Ex parte Wall, 107 U.S. 265, 280, 2 S.Ct. 569 (1883); In re Browning, 23 Ill.2d 483, 179 N.E.2d 14 (1961); In re Pennica, 36 N.J. 401, 177 A.2d 721 (1962); 123 A.L.R. 779 (1939); 7 Am. Jur.2d, Attorneys at Law § 57.

Thus the Executive Committee erred in concluding that, because the proceeding on the 1963 indictment ended in acquittal it was thereby rendered powerless to impose discipline.

Respondent makes a further argument in support of the dismissal. As we understand it, his argument is, in substance, that the Executive Committee had before it no competent evidence to support a finding of professional misconduct or untrustworthiness other than the 1954 conviction. We proceed to consider that claim.

The record of the proceeding from which the present appeal was taken shows that the hearing before the Executive Committee was conducted in two sessions: on April 29, 1968, and on May 6, 1968. During the first session there were offered and received into evidence four exhibits: Exhibit 1, a certified copy of the judgment and commitment on the respondent's 1954 conviction; Exhibit 2, a certified copy of the motion to remove the respondent's name from the roll of attorneys filed November 8, 1955, in the Supreme Court of Illinois; Exhibit 3, a certified copy of the order of the Supreme Court of Illinois striking respondent's name from the roll of attorneys of the State of Illinois, and Exhibit 4, a letter dealing with respondent's alleged involvement in narcotics trafficking purportedly written by the District Supervisor of the Federal Narcotics Bureau to the United States Attorney.

The letter from the Narcotics Bureau was objected to on the grounds that it was inadmissible under the rules of evidence and that its admission would violate respondent's due process rights.

The United States Attorney conceded that the letter from the Narcotics Bureau was replete with hearsay, conclusions and opinions. However, he urged that inasmuch as the proceeding was not a criminal or civil trial but a proceeding to consider an attorney's right to practice before the District Court, and since the judges were not jurors, he was certain they could disregard anything in the letter that was hearsay. Respondent's counsel retorted that since the proceeding involved an attorney's right to practice law, the United States Attorney was apparently saying that the rules of evidence had no application, that an attorney practicing law before the District Court was to be given less protection by the rules of evidence and due process than anyone else, and that the attorney was to be denied the opportunity for cross-examination. Nevertheless, the letter was received in evidence with the reservation that upon appropriate motion it would be subject to being stricken.[5]

---

5. The presiding judge stated to respondent's counsel:

"Well, I think some of the points you make are well taken. On the other hand, this is not a trial on which we should be bound completely by the Rules of Evidence, as would apply in an ordinary criminal trial.

"This is not a criminal hearing, or indeed, a civil case. It is an exercise by the Court of its discretion to decide who is fit to practice before it and who is not.

"I think that since it bears information on the subject now being considered by the Court, whether it be hearsay or otherwise, it should be received. On the other hand, I also feel that you should have a right—I haven't read it yet, any more than you have—that you should have a right, after having read it, either to call any of the people named therein for cross examination, if you wish to cross examine them before this Court in camera, or to file whatever answering document you may wish to file, affidavit or otherwise, or statement of the Respondent with reference thereto, and I certainly would want you to have ample opportunity to do that.

"Therefore, I would suggest at this time we receive it and you take such

The Committee also received for inspection the testimony of the 1964 subornation of perjury trial. This was in the form of an appendix, filed in the Court of Appeals as a part of the record on appeal from the conviction in the 1964 subornation of perjury trial.

Upon this evidence submitted at the first session on April 29, 1968, the United States Attorney rested his case.

Respondent's counsel was then asked whether he wished to make any presentation on behalf of respondent at that time or whether he would rather set another date. Respondent's counsel stated that in view of the material tendered at the hearing he would suggest that the Committee set another date. The Committee continued the hearing to May 6, 1968.

At the commencement of the second session, respondent's counsel filed a motion to strike petitioner's Exhibit 4, the letter from the Narcotics Bureau, on evidentiary and due process grounds.

The Executive Committee took the motion to strike under advisement reserving ruling upon the entire matter until the conclusion of the hearing.

After argument by respondent's counsel, the presiding judge inquired as to whether the respondent wished to be heard personally, stating that if he had read this Court's opinion in In re Echeles correctly, the main purpose of the hearing was to hear from the respondent. Counsel for respondent stated that until the Committee ruled upon the motion to strike the letter from the Narcotics Bureau he was in no position to make a determination as to having Echeles appear and respond. Thereupon the presiding judge directed the question to the respondent who, he observed, was present as a member of the bar. Respondent, while commenting that he had law-

yers, indicated that he would like to be heard—especially with respect to the charges placed against him by the Narcotics Bureau. Noting that the letter from the Narcotics Bureau was subject to the motion to strike, the presiding judge informed the respondent that the Committee would hear him with respect to matters other than those contained in the letter.

Respondent then asked whether he might consult with his counsel. Assuring him that he could, the presiding judge cautioned respondent that he did not think respondent should speak to the matters in the letter until the Committee had ruled on the motion to strike. Respondent was again asked whether he wished to be heard on any of the matters in the disciplinary petition. After further consultation between respondent and his counsel, respondent's counsel announced that other than the matter of petitioner's Exhibit 4, there was no evidence respondent desired to tender to the Court, either through the respondent personally or by any other source. Respondent then rested, subject to the ruling on the motion to strike petitioner's Exhibit 4. The Committee took the proceedings under advisement and fixed the time for filing post-hearing briefs on the motion to strike and on the merits of the petition.

▪ The United States Attorney submitted additional exhibits with his post-hearing memorandum of law in opposition to the motion to strike Exhibit 4. These were identified as Exhibits 5 through 8, and Exhibit 10. They were tendered ostensibly as "other business records" upon which Exhibit 4 was based. None of Exhibits 5 through 8, or Exhibit 10, were produced during the hearings. They were submitted without permission. In his post-hearing memorandum in opposition to the petition for

time as you wish to read it over and decide whether you would like to go further into the matters stated there by cross examining any of the people stating the material contained therein, or file any responsive document.

"I wouldn't expect you to argue it this afternoon; indeed, I wouldn't be able to hear it and I am sure my associates wouldn't. We haven't seen it before, either."

disbarment, respondent strenuously objected to this procedure. He pointed out that Exhibit 5 consisted of a copy of a statement purportedly made by a narcotics informer to a federal narcotics agent in 1949. Exhibits 6 and 7 consisted of copies or reports, allegedly made in 1959 by narcotics agents, summarizing the results of their investigations; Exhibit 8 was a copy of an "undated" poster concerning one James Ewing; Exhibit 10 consisted of copies of undated notes purportedly written by the respondent.

We conclude that Exhibits 4, 5, 6, 7, 8, and 10 were not competent evidence. The record does not show whether the Executive Committee decided to strike them, but for the purpose of any further proceedings, they must be stricken.

Under the circumstances, we think the Executive Committee was free to consider and make its own findings based upon the testimony in the 1964 trial. The Executive Committee was not bound by the judgment of acquittal on the 1963 indictment. On remand, it should make findings on the issues of professional misconduct and untrustworthiness. It is free, in its discretion, to reopen the hearing for additional evidence.

We adhere to the conclusion in our earlier decision that "it would be unfair, after this lapse of time and in the light of the intervening circumstances to treat the 1954 conviction as the sole foundation for any suspension or disbarment," but that "[t]he offenses of which he was convicted in 1954 are surely relevant to his trustworthiness as an attorney, and may properly be considered, with other, more recent facts, in a disciplinary proceeding at any time."

By reason of the Executive Committee's erroneous interpretation and application of this Court's decision in In re Echeles, 374 F.2d 780 (7th Cir. 1967), and the consequent inconsistency between the Committee's Findings of Fact and Conclusions of Law, the Committee's

Order of October 7, 1968, is vacated and set aside.

The matter is remanded to the District Court with directions to conduct further proceedings, not inconsistent with this opinion.