**In re Anonymous No. 11 D.B. 76**

Disciplinary Board Docket 11 D.B. 76.

UNKOVIC, *Board Member,* July 25, 1977—
Pursuant to Rule 208(d) of the Pennsylvania Rules
of Disciplinary Enforcement (rules), the Discipli-
nary Board of the Supreme Court of Pennsylvania
(board) herewith submits its findings and recom-
mendations to your honorable court with respect to
the above proceeding.

## I. HISTORY OF PROCEEDINGS

An information was filed against respondent in
the United States District Court for the [   ] District
of Pennsylvania, on March 1, 1976, alleging three
counts of failure to file income tax returns for the
years 1970, 1971 and 1972. On the same day, re-
spondent entered a plea of guilty to the offense of
willful failure to file income tax returns, in viola-
tion of the Internal Revenue Code of August 16,
1954, 68A Stat. 851, as amended, 26 U.S.C.A.
§7203, on counts 1 and 2, at no. [   ] in the above
court.

The Supreme Court received the record of convic-
tion of respondent, and, on April 5, 1976, in accord-

ance with Rule 17-14(c) (now Rule 214(c)) of the Pennsylvania Rules of Disciplinary Enforcement, referred the record to the Disciplinary Board for the institution of formal proceedings before a hearing committee.

Disciplinary counsel prepared and filed a petition for discipline, alleging violation of the following disciplinary rules:

a. "DR 1-102(A)(4)—Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

b. "DR 1-102(A)(5)—Engage in conduct that is prejudicial to the administration of justice."

c. "DR 1-102(A)(6)—Engage in any other conduct that adversely reflects on his fitness to practice law."

The proceeding was referred to hearing committee [ ] on August 25, 1976. That committee consisted of [ ], [ ] and [ ]. The hearing was conducted on Tuesday, November 5, 1976. Petitioner was represented by [ ], assistant disciplinary counsel, and respondent represented himself.

Petitioner rested its case after having the following exhibits marked and received into evidence:

a. *Petitioner's exhibit P-1*—Order of Supreme Court of Pennsylvania referring the matter to the Disciplinary Board for a hearing based on the certificate of conviction.

b. *Petitioner's exhibit P-2*—information filed in the United States District Court for the [ ] District of Pennsylvania, in the case captioned "United States of America v. [respondent]."

c. *Petitioner's exhibit P-3*—A copy of the judgment and probation/commitment order. The court

suspended a prison sentence and placed respondent on probation for two years.

d. *Petitioner's exhibit P-4*—Motion to dismiss count 3 of the information.

Respondent testified on his own behalf and did not offer any exhibits into evidence.

The hearing committee made the following recommendations:

A. Under Rule 204(3), public censure by the Supreme Court but on the condition that respondent voluntarily agrees to withdraw from the active practice of law until he is medically competent to resume the duties required in the practice of law; or, in the alternative,

B. Under Rule 204(2), suspension by the Supreme Court for a period of six months, during which period he is directed to undergo psychiatric treatment to prove his future competence to practice law upon reinstatement.

A brief on exceptions was filed by petitioner to the report of the hearing committee. There were no exceptions filed on behalf of respondent.

Petitioner did not take any exceptions to the hearing committee's findings of fact and discussion, as found in its report. Petitioner, however, did take exception to the hearing committee's recommendation concerning the appropriate discipline to be imposed. Petitioner urged that alternative A, as recommended by the hearing committee, was inappropriate and inadequate to protect the public. Further, petitioner submitted that the only discipline which would insure that respondent is medically competent to continue the practice of law would be a suspension for more than three months.

## II. DISCUSSION

We would adopt the findings of fact and discussion as found in the committee's report and which are undisputed. It appears to be obvious that at the time of the proceedings before the hearing committee, respondent, [   ], believed he was not capable of practicing law. His actions, as revealed in his own testimony, and his convictions in the Federal criminal court, lend strength to his statement.

Although we will not repeat the findings of fact and discussion of the hearing committee in totality, nevertheless, we believe it appropriate to point out certain portions of the evidence pertaining to respondent's ability to engage in the practice of law. We refer to:

*T. 6, Line 20*—"I haven't really functioned, to the point where today, Mr. Chairman, in all honesty I am virtually not functioning at all. I don't mean as a lawyer, just in the ordinary course of life.

"I think this year I took two cases. I haven't been to my office in well over a year, because they came to my house."

*T. 7, Line 4*—"I think that my problems are probably very, very deep-seated. To be very honest with you, I need help. . ."

*T. 8, Line 24*—"When I get up in the morning I get up afraid. If you ask me what I get up afraid of, I can't tell you. All I know is that I'm afraid. I'm afraid to leave the house. I'm afraid to stay home for fear someone will come to the house that I don't want to have anything to do with or see. I'm afraid to leave the house because I might meet you."

*T. 9, Line 22*—"Whatever it is—I'm not going to

try and psychoanalyze myself, but whatever it is—the real problem with me is not so much that I've gotten in trouble, which I have, but really that I haven't taken any real steps to correct whatever the hell the problem is."

*T. 28, Line 15—*

"[Mr. A.]: But with this pattern with no more explanation than this, if you were to presume [sic] practice, you would resume the same problems, wouldn't you?

"THE WITNESS: I think it would be very difficult for me. It's what I like, but I myself recognize it's very difficult for me to handle anymore."

*T. 29, Line 7—*

"[Mr. A.]: What I'm asking you, for your own evaluation, what makes you think that you can resume some sort of practice of law, whether it be criminal or civil trial work, and still not get in the same bind of not—because civil trial work, of course, is erratic too, and wouldn't you be going right back into the soup?

"THE WITNESS: To a certain degree, but to be honest with you, there's a more basic problem. To be very honest with you, I don't think I can take the responsibility of law at all unless I'm willing to go out first of all and get some help.

"To be very frank, I think there's an even more basic question. Am I willing to go, do I have to go; if I have to go to a free clinic and it has to be that way, am I willing to do it? I think that's what's important to me."

From the testimony, it is apparent that respondent has undergone many trials and tribulations. He has a very devoted wife and ten children, who

are being educated in various fields. He has been hospitalized six or seven times during the last several years. Respondent, by his own admission, is emotionally incapable of continuing the practice of law, unless he gets psychiatric help and is cured of his present fears and indecisiveness.

We would concur with the finding of the hearing committee that the evidence has satisfactorily established a violation of D.R. 1-102(5) and (6). The record is permeated by the admissions of respondent that he is unable to function as a lawyer.

Chief Justice Jones In the Matter of Leopold, 469 Pa. 384, 366 A. 2d 227 (1976), discussed the public position of one who is a member of the legal profession. He stated that it is a position of great responsibility and that integrity and exercise of good faith in an attorney's professional engagements are essential for the protection of the public, the courts and the profession. Chief Justice Jones went on to say that each member of the bar is an officer of the court, and it is the solemn duty of the judiciary to insure that proper standing of its officers is preserved. In a footnote at page 392 of 469 Pa., and at page 231 of 366 A. 2d (7th Cir. 1970), the court cited a case from the Seventh Circuit, In re Echeles, 430 F. 2d 347, 349 (7th Cir. 1970), quoting, inter alia, the following language:

"[D]isbarment and suspension proceedings are neither civil nor criminal in nature but are special proceedings, sui generis, and result from the inherent power of courts over their officers. Such proceedings are not lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent. They are not for

the purpose of punishment, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice."

We, on the Disciplinary Board, are sensitive to the havoc that public discipline creates in the life of the affected respondent lawyer. Although we may be sympathetic to the plight in which respondent finds himself, nevertheless, that sympathy must be outweighed by the right of the public to expect an officer of the court to be fit to practice law. The privileges granted to lawyers in the exercise of their profession may be transgressed as much by inability and incompetency to act as by willful violation of the Rules of the Code of Professional Responsibility.

The hearing committee has dealt with this petition for discipline with great understanding of the problems of respondent and also the rights of the public. We have already mentioned that we would adopt the findings of fact and discussion of the hearing committee; nevertheless, we would suggest a recommendation different in content from that of the respected hearing committee.

Our recommendation, as set forth hereinafter, would delete any reference directing that respondent undergo psychiatric treatment to prove his future competence to practice law upon reinstatement. Under Rule 218 of the Pennsylvania Rules of Disciplinary Enforcement, no attorney suspended for a period exceeding three months may resume practice until reinstated by the order of the Supreme Court, after petition therefor, subject to cer-

tain exceptions which are not applicable in this proceeding. Therefore, it is obvious that it would be incumbent upon respondent if suspended for a period exceeding three months to assure the court of his competency, if and when he sought reinstatement.

### RECOMMENDATION

The board agrees with the conclusion of the hearing committee that respondent violated D.R. 1-102(A)(5) and D.R. 1-102(A)(6) and recommends to your honorable court that respondent be suspended for a period of four months pursuant to Rule 204(2).

### ORDER

EAGEN, *C.J.* —And now, August 11, 1977, the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania, dated July 25, 1977, recommending that respondent be suspended for a period of four months, are not approved; and it is

Ordered, that respondent is to be placed on probation for a period of one year, subject to the supervision of the Disciplinary Board and upon condition that he submit himself to psychiatric treatment immediately; and it is

Further ordered, that a periodic report of the results of the treatment is to be forwarded to the Disciplinary Board at the end of each three months of the probationary period.