LAURENCE N. SMITH, Plaintiff-Appellant, v. THE DEPARTMENT OF PROFESSIONAL REGULATION, Defendant-Appellee.

First District (3rd Division) No. 1—89—1926

Opinion filed August 15, 1990.

Fioretti & Des Jardins, Ltd., of Chicago (Robert W. Fioretti, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ralanda Webb, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Laurence N. Smith, appeals the affirmance of the administrative decision of defendant, Illinois Department of Professional

Regulation, to suspend him from the practice of chiropractic medicine for an indefinite period.

Defendant's amended administrative complaint against plaintiff charged him with several violations of section 16 of the Medical Practice Act (Act) (Ill. Rev. Stat. 1983, ch. 111, par. 4401 *et seq.*). Specifically, it charged that, in the course of treating four different patients in 1983, plaintiff engaged in conduct which constituted: (a) dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public; (b) willfully making and filing false records and reports in his practice; and (c) gross, willful and continued overcharging for professional services, including but not limited to the filing of false statements for collection of fees for services not rendered. Ill. Rev. Stat. 1983, ch. 111, pars. 4433(5), (21), (24).

After an evidentiary hearing, the administrative law judge (ALJ) who conducted the hearing issued findings of fact, conclusions of law and a recommendation that plaintiff's license be suspended. Subsequently, defendant's Medical Disciplinary Board (Board) found that, based upon the evidence, plaintiff knew, at the time of their submission, that the bills he submitted to the insurers of the four patients whose treatment formed the basis of the complaint against him contained charges for services not rendered. Consequently, it recommended, and defendant's Director ordered, that plaintiff's license be suspended for an indefinite period.

## I

On appeal, plaintiff first contends that defendant's decision was against the manifest weight of the evidence. Specifically, plaintiff challenges four findings of fact by the ALJ which, along with his other factual findings and conclusions of law, were adopted by the Board: (a) that he engaged in a "pattern of bill padding"; (b) that the four patients whose treatment was at issue were more credible than plaintiff's records on the issues of what services plaintiff rendered to them and when he rendered them; (c) that plaintiff performed medically unnecessary procedures on the patients; and (d) that plaintiff submitted inaccurate and misleading bills to the patients' insurers.

## A

In challenging the ALJ's finding that a "pattern of bill padding" was evident from plaintiff's patient records and the testimony, plaintiff notes or argues that: (1) in treating the four patients whose treatment was at issue, pursuant to his practice of not requesting co-payments from them, he merely accepted what their insurers paid him,

even if that amount was less than the entire bill; (2) Dr. Guzzo, defendant's expert, stated that the practice of not receiving co-payments from patients with insurance and merely accepting what their insurers paid on their chiropractic bills did not constitute fraud and that the market determined the propriety of charges for chiropractic services; (3) "the uncontroverted testimony" was that he charged all of his patients the same fees, based solely on the services rendered, whether or not they participated in his "no co-payments" program; (4) there was simply no record evidence to support a conclusion that his "no co-payments" practice was improper or fraudulent; and (5) there was insufficient evidence as to what the proper fees for the four patients involved should have been so as to allow a finding that the fees charged to their insurers were grossly excessive.

We believe that the foregoing evidence noted and arguments made by plaintiff relate to "bill padding" in the sense of charging higher than customary fees for services rendered. However, in so construing the term "bill padding" as used by the ALJ and, implicitly, the term "overcharging" as used in defendant's amended complaint, plaintiff has ignored that the overcharging which the complaint alleged against him specifically included overcharging in the sense of charging for services not actually rendered. As such, the fact that the evidence may have been insufficient to support a finding that plaintiff had engaged in overcharging by charging higher than customary fees for his services is of no avail to plaintiff in demonstrating that he had not overcharged in the specific sense alleged in the amended complaint.

■■ ■ For this same reason, we find unavailing plaintiff's further argument that the ALJ's finding that his charges "were too high" did not satisfy the statutory requirement of a finding that they constituted gross, willful and continuous overcharging. This argument too reveals that plaintiff has myopically focused upon the amount of the fees he charged for discrete services rather than his alleged charging of fees for services not rendered. Given the abundant record evidence that plaintiff repeatedly charged for services not rendered and the ALJ's references to that evidence in his factual findings, the finding that plaintiff's charges were "too high" was merely incidental to the findings which did satisfy the statutory requirement of gross, willful and continuous overcharging. In this regard, we believe that "overcharging" as used in the Medical Practice Act, like the phrase "bill padding," may mean charging too much for services rendered and/or charging for services not actually rendered. It is clear from the allegations of defendant's amended complaint that it was "overcharging" in the latter sense which was mainly at issue in this case. The evi-

dence adduced by defendant abundantly proved those allegations.

**B**

Regarding the second challenged finding of fact, plaintiff argues, essentially, that his business records were entitled to greater weight than the testimony of the four patients whose treatment was at issue, with respect to the issue of what services he actually rendered to them. Specifically, with respect to the conflict between his records and the testimony of one of the patients, Thomas Cihlar, as to the dates of Cihlar's visits to plaintiff, plaintiff asserts that Cihlar's testimony was not credible given his uncertainty about the months in 1983 in which he was treated by plaintiff. We cannot agree.

■■■ It is for the finder of fact to evaluate all evidence, including the testimony and medical records produced; to judge the credibility of witnesses; to resolve conflicts in medical evidence; and to draw reasonable inferences and conclusions from the facts. (See *Millis v. Industrial Comm'n* (1982), 89 Ill. 2d 444, 433 N.E.2d 662.) Moreover, there is always a possibility that business records are in error, and they deserve no special presumption of credibility as compared to the opposing testimony of a witness. (*Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 158, 349 N.E.2d 578.) In this latter regard, the fact that plaintiff's records were positively shown to contain material errors and omissions regarding the treatment and services rendered the four patients provided even more reason to find them less credible than the testimony of those patients. The ALJ's finding of the testimony of the four patients as more credible than plaintiff's business records was not against the manifest weight of the evidence.

■■ In the same vein, plaintiff further asserted that the ALJ erred in denying his request for subpoenas for records of other physicians who had treated the four patients. Plaintiff intended to use the records of the other physicians to impeach the four patients' recollection of the services which he rendered to them. This argument is unavailing to plaintiff. Preliminarily, we note that plaintiff fails to cite any authority whatsoever to support his right to such subpoenas. As such, we may consider this argument waived. (*In re Marriage of Talmadge* (1989), 179 Ill. App. 3d 806, 534 N.E.2d 1356.) Equally as important, however, is plaintiff's failure to address his right to such records in the face of the physician-patient privilege which, given his asserted intent to have questioned the four patients on "the specifics of medical care" rendered by other practitioners, might very well apply to such records. The denial of the requested subpoenas was not error.

## C

With respect to the third finding of fact which plaintiff challenges, he argues that the evidence did not reveal that he violated the Act by performing medically unnecessary procedures. Plaintiff grounds this argument on the inconsistency between the ALJ's lengthy discussion, in his findings of fact, of the allegedly unnecessary X rays and blood tests performed on some of the four patients, on one hand, and the ALJ's conclusion, on the other, that this case did not involve plaintiff's failure to use or apply his skills in compliance with the standards of his profession. As further evidence of this inconsistency, plaintiff also cites the ALJ's statement at the conclusion of the evidentiary hearing that the issue of unnecessary X rays was the only substantive issue concerning plaintiff's professional practice, "meaning whether he was competently performing his duties as a treating practitioner."

We find this argument unavailing. Plaintiff's argument, in essence, seems to be that, in order to conclude that he violated the Act by performing unnecessary X rays and other tests, the ALJ also had to conclude that the performance of such procedures evidenced that plaintiff either did not possess or apply the skills of a competent practitioner. We must concede that the ALJ's characterization of the issue of unnecessary X rays as the only issue concerning plaintiff's competency lends credence to his argument. However, in finding the argument ultimately unpersuasive, we must note that the ALJ so characterized the issue of the unnecessary X rays only for the purpose of informing the Board as to the issues in plaintiff's case. That is, the ALJ was not, in our view, making a binding pronouncement of the elements of proof of plaintiff's violation of the Act by performing the unnecessary X rays. As such, the failure to find that plaintiff had either not possessed or applied the skill required of a competent practitioner did not preclude the ALJ from finding that the unnecessary procedures nonetheless constituted a violation of the Act.

The difference in the plaintiff's view and our view on this question is akin to that between negligent and intentional conduct. That is, plaintiff asserts that, not having found negligence on his part, the ALJ could not find a violation of the Act. We, however, believe that, given the evidence before him, the ALJ must have ultimately based his finding of a violation of the Act in performing unnecessary procedures on intentional, not negligent, conduct by plaintiff. Viewed in that light, the ALJ's finding was not against the manifest weight of the evidence.

D

With respect to the finding that he submitted false and misleading bills to the four patients' insurers, plaintiff argues, essentially, that regardless of the fact that he designated both the procedure of hands-on manipulation and the procedure of intersegmental traction as "manipulation" on his bills to the insurers, he provided all of such services for which he billed them.

■ Preliminarily, we disagree with plaintiff that "nothing in the record demonstrates" that he billed for manipulation on dates when he did not perform either hands-on manipulation or intersegmental traction. We find the record in this case rife with evidence that, indeed, plaintiff billed for services, including but not limited to manipulations (whether hands-on or mobilizing—as plaintiff refers to intersegmental traction) supposedly rendered on dates when, in fact, he had not provided *any* such services to the four patients. Defendant thus acted properly in choosing to believe that evidence rather than plaintiff's contradictory evidence.

■ Moreover, we find without merit plaintiff's attempt to avoid the expert testimony that in chiropractic the term "manipulation" is not used to designate other than hands-on manipulation. There is abundant record evidence to support the conclusion that the standards, applicable to chiropractors in the Chicagoland metropolitan area in 1983, required the use of the term "manipulation" to refer only to hands-on or manual manipulation of a patient's spine. The standards further called for billing as "manipulations" only such manipulations performed on a patient. As such, to the extent that plaintiff designated intersegmental traction as "manipulation" in billing the insurers of the four patients, defendant properly found that he knowingly misled the insurers and filed false records and reports to support his requests for payments.

II

Plaintiff next contends that the ALJ applied an incorrect standard in denying his motion for directed verdict. Specifically, plaintiff asserts that, in concluding that "there's a way that the facts in the record could now be read or found to meet [the] clear and convincing evidence standard," the ALJ applied a less stringent standard than that of clear and convincing evidence, which defendant was required to meet to make out a *prima facie* case against plaintiff (*Smith v. Department of Registration & Education* (1952), 412 Ill. 332, 106 N.E.2d 722; *Cicmanec v. Department of Registration & Education* (1989), 182 Ill. App. 3d 710, 538 N.E.2d 1166). We cannot agree.

 ■ Preliminarily, we agree with defendant that, by failing to raise this issue before the ALJ or Board, plaintiff has waived it on appeal to this court. (*Leffler v. Browning* (1958), 14 Ill. 2d 225, 151 N.E.2d 342; *A.R. Barnes & Co. v. Department of Revenue* (1988), 173 Ill. App. 3d 826, 527 N.E.2d 1048.) The fact that the issue of the standard of proof which the State was required to meet implicates plaintiff's due process rights (see *Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 497 N.E.2d 984) does not require a contrary result. The rule of waiver applies equally to issues involving constitutional due process rights. (See *Commonwealth Edison Co. v. Department of Local Government Affairs* (1984), 126 Ill. App. 3d 277, 466 N.E.2d 1351; *Quinn v. Department of Registration & Education* (1971), 132 Ill. App. 2d 925, 271 N.E.2d 11.) Moreover, plaintiff's argument that he preserved the error for appeal by raising it in the circuit court is meritless. The waiver rule specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts. (*Leffler*, 14 Ill. 2d 225, 151 N.E.2d 342; *A.R. Barnes*, 173 Ill. App. 3d 826, 527 N.E.2d 1048.) Given that, in administrative review cases, including those involving defendant, the circuit courts act as the first-tier courts of review (Ill. Rev. Stat. 1989, ch. 110, pars. 3—104, 3—110; Ill. Rev. Stat. 1983, ch. 111, par. 4447), the reason and logic behind that requirement are clear.

 Assuming, *arguendo*, that plaintiff did not waive the instant issue, we find it substantively without merit. In arguing that the ALJ applied a less stringent standard than clear and convincing evidence, by allowing that "there's a way that the facts in the record could now be read or found to meet [the] clear and convincing evidence standard," we believe that plaintiff has misconstrued the meaning of that standard. That is, we do not believe, as plaintiff implies, that to meet the clear and convincing evidence standard, defendant was required to adduce evidence from which only one conclusion, *viz.*, plaintiff's guilt of the charges against him, could conceivably result. As such, the ALJ's implicit recognition, in the language quoted, that more than one conclusion was possible from defendant's evidence did not amount to the application of a lesser standard against that evidence than "clear and convincing." Prior construction of the meaning of the clear and convincing evidence standard buttresses our analysis.

 Clear and convincing evidence or testimony has been defined, *inter alia*, as not synonymous with uncontradicted or unimpeached testimony nor crystal clear and perfect. (*People v. Monk* (1988), 174 Ill. App. 3d 528, 528 N.E.2d 1063.) This definition, we be-

lieve, reveals that clear and convincing evidence is not, as plaintiff implies, such evidence as from which only one conclusion can logically flow. Moreover, the fact that it may be such evidence from which the trier of fact may have to draw inferences and, thus, as the ALJ recognized in this case, from which it might conceivably draw differing inferences is established in *In re Browning* (1961), 23 Ill. 2d 483, 179 N.E.2d 14, *Bilyeu v. Plant* (1966), 75 Ill. App. 2d 109, 220 N.E.2d 513, and *Kimbrough v. Parker* (1951), 344 Ill. App. 483, 101 N.E.2d 617.

In *Browning*, a disbarment action, the court stated:

"These inferences, which the respondent would have us draw, are not the only ones that flow from this record, and the question to be determined is whether there are other inferences, so natural and probable as to amount to clear and convincing proof of misconduct, which support the finding of the Commissioners." (*Browning*, 23 Ill. 2d at 494.)

Upon reviewing the evidence and the applicable law, the trial court affirmed the disbarment order.

Similarly in *Bilyeu*, the court, after noting that a resulting trust must be proven by clear, convincing, unequivocal and unmistakable evidence, reasoned that "unless the trial judge could find that the plaintiffs' evidence was so clear, convincing and unequivocal as to enable him to *draw the inferences* and reach the conclusions necessary to a finding that there was a resulting trust, defendant's motion for judgment was properly allowed." (Emphasis added.) *Bilyeu*, 75 Ill. App. 2d at 119.

Finally, in *Kimbrough*, a fraud case, the court, after reviewing the testimony, stated:

"We think this testimony, and the justifiable inference that defendants did not intend to do what was represented, is sufficient for our conclusion that there was evidence which tended to show clearly and convincingly that defendants made false representations upon which the [plaintiffs] relied." *Kimbrough*, 344 Ill. App. at 488.

The foregoing cases, especially *Browning*, amply reveal that the fact that inferences may have to be drawn from evidence and that, as is inherent in the nature of inferential cogitation, they may be differing does not preclude the evidence from which they are drawn from being clear and convincing. We believe that the statement of the ALJ which plaintiff cites as evidencing his application of a lesser standard than that simply recognizes the foregoing fact. Plaintiff's contention of prejudice is meritless.

## III

Plaintiff lastly contends that the participation of Dr. Lawrence Levin in an investigative interview conducted by defendant prior to the commencement of the administrative hearing and in the administrative hearing as an advisor to the Board was improper. Specifically, plaintiff argues that the doctor's participation in the investigative interview gave rise to the possibility that his report to the Board contained evidence which he learned in that interview, contrary to the rule that an administrative decision be based strictly upon the evidence presented at the administrative hearing. *Landenheim v. Union County Hospital District* (1979), 76 Ill. App. 3d 90, 394 N.E.2d 770.

■■ We find plaintiff's contentions without merit. Preliminarily, we find that plaintiff waived any error in Dr. Levin's participation in the investigatory and adjudicatory phases of plaintiff's case for the same reason that he waived any alleged error in the ALJ's formulation of defendant's burden of proof. Moreover, as with that alleged error, we find the instant contentions of error without substance.

■■ With respect to any conflict of interest under which Dr. Levin may have been laboring, as plaintiff himself notes, *Landenheim* establishes that the combination of the investigative and adjudicative functions does not violate due process where no actual personal bias resulting therefrom is demonstrated in the record. (*Landenheim*, 76 Ill. App. 3d at 95.) Given plaintiff's burden of proof on the issue of personal bias, we find his mere assertions that any use by Dr. Levin of any information gathered during the investigative interview "would be improper" insufficient to demonstrate the doctor's actual personal bias.

Lastly, plaintiff contends that, without regard to any conflict of interest, Dr. Levin's appointment as an advisor to the Board was improper because defendant's own rules do not grant it authority to appoint advisors.

■■ ■ Beyond finding that plaintiff waived this issue as well, we believe that defendant's power and authority to make such an appointment is implied in its statutorily granted powers. It is well established that express, legislative grants of powers or duties to administrative agencies include the power to do all that is reasonably necessary to execute those powers or duties. (*Lake County Board of Review v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 519 N.E.2d 459.) Moreover, administrative agencies are to be given wide latitude in determining what actions are "reasonably necessary," and a court may not overturn an agency policy or action simply because the court considers the policy unwise or inappropriate. (*Oak Liquors,*

*Inc. v. Zagel* (1980), 90 Ill. App. 3d 379, 413 N.E.2d 56.) Given plaintiff's failure to cite any authority expressly prohibiting defendant's appointment of advisors such as Dr. Levin, we will abide by the foregoing rules. For that same reason, we find inapposite *Heavner v. Illinois Racing Board* (1982), 103 Ill. App. 3d 1020, 432 N.E.2d 290, which merely holds that administrative agencies must strictly comply with their promulgated rules.

For all of the reasons stated herein, we affirm the judgment of the circuit court affirming defendant's decision to suspend plaintiff's chiropractic license.

Affirmed.

RIZZI and WHITE, JJ., concur.