E S G WATTS, INC., Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—91—0383

Opinion filed January 31, 1992.

Immel, Zelle, Ogren, McClain & Costello, of Springfield (Kevin T. McClain, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for respondent Pollution Control Board.

JUSTICE HAASE delivered the opinion of the court:

The petitioner, E S G Watts, Inc. (Watts), filed applications for permits to construct an industrial waste storage and treatment facil-

ity. This case concerns Watts' application for a National Pollutant Discharge Elimination System (NPDES) permit. The Illinois Environmental Protection Agency (IEPA) denied the permit, and Watts appealed the decision to the Illinois Pollution Control Board (Board). The Board affirmed the IEPA's denial of the permit. Watts appeals from that decision.

On February 11, 1987, Watts, a subsidiary of Watts Trucking Services, Inc., filed applications for an NPDES permit and a part B Resource Conservation and Recovery Act of 1976 permit (42 U.S.C. §6901 *et seq.* (1988)) (RCRA) with the IEPA to construct a facility in Rock Island, Illinois, for the storage and treatment of hazardous waste. The proposed facility would store and treat hazardous wastes that are water based or aqueous in nature such as wastes containing heavy metals, dichromate, cyanide, sulfide, oil, and solvent residues. The complex would be designed to treat and discharge 100,000 gallons of wastewater per day.

Watts' application for the NPDES permit indicated that the treated wastewater was to be discharged into the City of Rock Island's storm sewer system, and from there it eventually would be discharged into the Mississippi River.

On March 25, 1987, Watts requested a waiver of the 90-day period for final IEPA action and suggested a deadline date of 210 days from the initial date of filing. Watts' request for a waiver of the deadline was repeated three more times as each expiration date approached. On August 12, 1988, the IEPA issued Watts a tentative draft RCRA permit. At that time, the IEPA informed Watts that it would issue a final decision on the permit after a public comment period.

In June 1988, Watts advised the IEPA that it would have to make changes concerning the method of discharge of the wastewater. In November 1988, Watts' consulting engineer notified the IEPA that Watts had changed its planned method of disposal of the wastewater. The engineer indicated that the original method of disposal (into the city's storm sewer) was not feasible since the storm sewer system was interconnected with the sanitary sewer system. Therefore, Watts noted that it was going to pursue plans for routing the discharge through a private pipeline into the Mississippi River. This method, however, required an easement from the City of Rock Island to extend the pipeline under a city street.

On September 2, 1988, the IEPA issued a public notice regarding the proposed NPDES permit. Although a public hearing was not held on the NPDES permit, a hearing was held on Watts' RCRA permit application.

On March 29, 1990, the city denied Watts' request for an easement. The next day, the IEPA denied Watts' NPDES permit application. The denial letter stated that "[a]n NPDES permit for the proposed project cannot be issued because a feasible discharge location has not been identified. Construction permits cannot be issued until an NPDES permit can be issued."

Thereafter, Watts filed an appeal with the Board. Following a hearing, the Board affirmed the IEPA's denial of Watts' permit request. Watts appeals from that decision.

On appeal, Watts first argues that the IEPA failed to make a final decision regarding the permit within the statutory review period set forth in section 39(a) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 1039(a)).

■ We find that Watts waived the issue by failing to raise it in the proceedings before the Board. (See *Smith v. Department of Professional Regulation* (1990), 202 Ill. App. 3d 279, 559 N.E.2d 884.) Moreover, we note that Watts repeatedly waived the statutory review period throughout the permit approval process.

Watts next contends that the Board erroneously affirmed the IEPA's denial of the permit. Watts attempts to intermingle its problems in obtaining an easement from the City of Rock Island with the IEPA's denial of the permit. Watts cites *County of Lake v. Pollution Control Board* (1983), 120 Ill. App. 3d 89, 457 N.E.2d 1309, and *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 343 N.E.2d 493, in support of its argument that the IEPA should not be allowed to deny a permit if the method of discharge was subject to a local zoning ordinance.

■ We find that the cases relied on by Watts do not apply. The proposed facility was not subject to a local zoning ordinance. Moreover, we note, as the supreme court noted in *Village of Carpentersville v. Pollution Control Board* (1990), 135 Ill. 2d 463, 553 N.E.2d 362, that the Act has been amended so that it no longer preempts local zoning ordinances. Accordingly, Watts' reliance on *Carlson* and *County of Lake* is misplaced.

Watts next contends that the IEPA's decision to deny the permit was based on speculation that Watts might, at some indefinite point in the future, violate the Act by improperly disposing of the wastewater. Watts further contends that there was no evidence in the record to support the finding that the issuance of the permit would cause harm.

It is well settled that the petitioner has the burden of proving that the operation of a facility would not cause a violation of the Environmental Protection Act or Board regulations. (*IPB, Inc. v. Pollu-*

*tion Control Board* (1990), 204 Ill. App. 3d 797, 563 N.E.2d 72.) The application for an NPDES permit must contain sufficient information for the IEPA to determine that the proposed discharge will be in compliance with all State and Federal requirements. (35 Ill. Adm. Code §309.103 (1985).) In deciding whether to issue an NPDES permit, the IEPA must ensure compliance with effluent standards and pretreatment standards of the Clean Water Act and water quality standards established by Illinois law and regulations. (35 Ill. Adm. Code §309.141 (1985).) On review, the appellate court will uphold the Board's decision unless it is against the manifest weight of the evidence and a different conclusion than that reached by the Board is evident. *Willowbrook Motel v. Pollution Control Board* (1985), 135 Ill. App. 3d 343, 481 N.E.2d 1032.

■ Applying the above-mentioned principles, we find that the Board's decision was not against the manifest weight of the evidence. Watts' arguments are unpersuasive considering that it had the burden of proving that the permit would not violate the Act. As the Board noted, Watts failed to specify the method of discharge and where the discharge point would be located. Although Watts generally stated that it would like to discharge the wastewater into the Mississippi River, it never definitively and specifically stated where and how that would be accomplished. Without that information, the IEPA would have had to speculate about whether Watts would be able to comply with the Act. Accordingly, we find that the NPDES permit application was properly denied.

For the foregoing reasons, we affirm the decision of the Pollution Control Board.

Affirmed.

GORMAN and SLATER, JJ., concur.