JOHN KING HOLDEN, Counterplaintiff-Appellant, v. POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Counterdefendants-Appellees.

First District (4th Division)   No. 1—00—1117

Opinion filed August 2, 2001.

Paul D. Geiger, of Chicago, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Marc J. Boxerman, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE SOUTH delivered the opinion of the court:

On July 19, 1982, plaintiff became a member of the Chicago police department as a police officer, and a detective approximately eight years later. While employed by the police department, plaintiff attended and graduated from law school. After passing the bar exam in 1991, plaintiff opened a private practice. Plaintiff met Alderman Jesse Evans (Evans) after he began practicing law and eventually became Evans' family attorney, handling various family matters for him.

On January 5, 1996, while at the hospital witnessing the birth of his child, plaintiff saw a television newscast concerning Evans' possible involvement in the Operation Silver Shovel corruption probe. He immediately telephoned Evans to inquire about the investigation. Plaintiff spoke with Evans' wife, who informed him that Evans was not home. Plaintiff told her that if there was anything he could do to help, she should let him know. On January 6, 1996, plaintiff visited Evans' home and spoke with him regarding the investigation.

On January 8, 1996, plaintiff arranged a meeting between Evans and three prospective attorneys—Michael Koch, Michael Monico, and retired judge George Leighton—to assess their abilities and experience for possible representation of Evans. Plaintiff was present at each of these meetings to assist Evans and also sought advice on whether there would be any conflict of interest should he chose to represent Evans in any future matters concerning the federal government's investigation. Plaintiff also contacted Lieutenant Matula of the Chicago police department and an attorney from the city's attorney's office concerning possible conflicts of interest. Both Matula and the attorney told plaintiff that he should investigate the matter himself. After these meetings Evans decided to retain Monico as his attorney.

On August 10, 1998, the superintendent of police filed charges of misconduct against plaintiff with the Police Board of the City of Chicago (the Board) for allegedly failing to notify the department of information he received from Evans regarding his illegal activities, for proffering incredible testimony in the United States District Court, for failing to answer questions asked by Sergeant Karen Rowan during an interview in December 1997, and for failing to cooperate with Federal Bureau of Investigation (FBI) Agent Joseph Karmik's investigation. The charges were for violation of Rules 2, 3, 6 and 21 of the police department.[1] The superintendent requested that the Board discharge plaintiff from his duties with the police department as a result of these violations.

The hearings for plaintiff's discharge were held on February 17 and 18, 1999. Koch, Sergeant Rowan and Agent Karmik testified on behalf of the superintendent against plaintiff.

Koch testified that he received a telephone call from plaintiff prior to January 8, 1996, requesting that he meet with plaintiff and Evans. He testified that plaintiff asked him if he was familiar with Operation Silver Shovel and that he had a close friend who was going to be indicted and wanted to speak with him concerning this issue. During the January 8 meeting plaintiff, according to Koch, was very comforting toward Evans and Evans wanted plaintiff to remain with him during this meeting because he seemed very emotionally distraught. Koch

---

[1] Rule 2—"Any action or conduct that impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department"; Rule 3—"Any failure to promote the Department's efforts to implement its policy or accomplish its goals"; Rule 6—"disobedience of an order or directive, whether written or oral"; and Rule 21—"failure to report promptly to the Department any information concerning any crime or other unlawful activity."

testified that it was his opinion that no attorney-client relationship existed between plaintiff and Evans due to his presence in the room. Koch stated that plaintiff told him that he was present at the interview as a friend and that he might be a potential character witness.

Koch further testified that in this meeting and in plaintiff's presence Evans admitted to taking illegal bribes. Evans informed Koch generally of his meeting with the FBI, and they discussed a videotape the FBI possessed of Evans taking bribes. Koch discussed the federal sentencing guidelines with Evans and possible variations of sentencing that could be imposed on him. Evans then requested that Koch meet with David Rosenbloom from the United States Attorney's office concerning a possible plea bargain.

Koch testified that while Evans and plaintiff were still in his office, he called Rosenbloom and set up a meeting to discuss a possible plea. Rosenbloom informed him of the conversation he had with Evans.

Koch took one page of notes during this meeting, which was considered by the Board. It included notations regarding the attorney-client privilege, a possible plea bargain and sentencing categories. The Board also considered a letter from Koch to an assistant United States Attorney, dated November 22, 1996, which stated that he had met with Evans and plaintiff, that he informed them that any assertion of privilege might have been waived due to the presence of a third party, and that Evans acknowledged that the conversation was not privileged and requested that plaintiff remain in the room. In the letter, Koch declined to discuss the contents of the meeting and refused to produce his notes due to the possibility that the attorney-client privilege might be asserted.

Several hours after plaintiff and Evans left Koch's office, plaintiff called Koch and told him that they had chosen another attorney to represent Evans. Koch later testified against Evans on behalf of the federal government.

Agent Karmik testified that he conducted an interview of plaintiff on November 1, 1996. During that interview, Agent Karmik stated that plaintiff informed him that he was not representing Evans in an attorney-client capacity and had never represented him due to a possible conflict of interest. Agent Karmik stated that when he questioned plaintiff about the substance of his conversations with Evans, plaintiff refused on five different occasions to divulge this information based upon attorney-client privilege. Agent Karmik testified to plaintiff's unwillingness to disclose what Evans had told him during their meeting, citing attorney-client privilege. Agent Karmik also testified that plaintiff stated that Evans never admitted to him that he had taken

any bribes or committed any crime of any type. Agent Karmik further testified that the content of the conversations between plaintiff and Evans was necessary for the government's investigations.

In December 1997 and February 1998, Sergeant Rowan of the internal affairs division of the Chicago police department testified that she questioned plaintiff regarding his involvement in the Silver Shovel investigation with Evans. Sergeant Rowan sought to determine whether plaintiff had obtained any information concerning Evans' wrongdoings in derogation of his duties to the police department. When Sergeant Rowan asked plaintiff questions regarding any possible admissions Evans might have made, plaintiff stated that his conversations were protected by attorney-client privilege and refused to answer.

Sergeant Rowan also testified that she was present during plaintiff's live testimony before the United States District Court to determine whether Koch would be called to testify in Evans' trial.[2] She stated that when she was investigating plaintiff, she relied upon the United States District Court's ruling that plaintiff's conversations with Evans were not privileged. Sergeant Rowan testified that due to plaintiff's incredulous and embarrassing testimony, he had breached Rule 2 of the police department.

Monico testified that he met with plaintiff on January 8, 1996, and believed plaintiff was representing Evans at this meeting and that the attorney-client relationship between Evans and plaintiff did exist and it had not been waived. Monico stated that it was his understanding that plaintiff was the referring attorney and that he, Monico, was subsequently retained by Evans.

Plaintiff testified that when he initially met with Evans on January 6, 1996, it was an attorney-client meeting. He stated that he maintained this attorney-client relationship during his meetings with the three prospective attorneys, all of which took place on January 8, 1996. Plaintiff testified that he made sure that all three attorneys chosen had significant criminal law experience and that he knew that bribery was a crime.

Plaintiff testified that the meeting with Koch lasted approximately 15 minutes and that prior to the meeting he knew that potentially

---

[2]In January 1997, during a hearing to determine if Koch would be required to testify during Evans' trial, a United States District Court judge held that plaintiff's conversations with Evans were not protected by attorney-client privilege and that, therefore, Koch could testify concerning the contents of these conversations. The court also held that plaintiff's testimony was not credible or believable.

there could be a conflict of interest with respect to his employment. During his testimony before the district court, which the Board considered, plaintiff testified that prior to January 1996, he had an attorney-client relationship with Evans and that he did inform Koch of this relationship at their meeting with Evans. Plaintiff stated that at no time did Koch inform him that Koch's presence in the room would destroy plaintiff's attorney-client relationship with Evans. Plaintiff also testified that Evans never authorized Koch to enter into any negotiations with the federal government on his behalf. Plaintiff represented Evans as a family attorney up until the time he realized that there would be a conflict of interest. In the beginning, prior to Evans' indictment, he did not realize that this was a criminal matter. Approximately one week after plaintiff met with Evans, he realized that he could not represent him in the indictment and informed Evans of this fact.

Plaintiff also testified that at no time did Evans ever admit to him that he had committed any criminal activities or had taken any bribes. Furthermore, Evans never admitted to anything in Koch's presence regarding any criminal activity.

Plaintiff testified that his meeting with Monico lasted for 45 minutes and that afterwards he realized that he could not represent Evans anymore.

During the questioning with Agent Karmik, plaintiff answered many of his questions but could not answer questions that he considered to be privileged.

During his interview with Sergeant Rowan, plaintiff was unable to answer questions because they were privileged in his opinion.

On May 5, 1999, the Board unanimously found plaintiff guilty on all counts. However, instead of discharging plaintiff, as the superintendent had requested, the Board suspended him without pay for a period of one year, which was to end on August 10, 1999.

On June 7, 1999, the superintendent requested administrative review of the Board's decision to impose a punishment of suspension without pay instead of discharge. Plaintiff filed a reply and counterclaim against the superintendent. In plaintiff's request for administrative review, plaintiff asserted that the Board's findings should be reversed and that the superintendent's request for discharge should be denied.

On February 23, 2000, the trial court denied both petitions for administrative review and upheld the decision of the police board.

The only issue on appeal is whether the findings of the Board that plaintiff violated four City of Chicago police department rules were against the manifest weight of the evidence.

●1 Since the police board is an administrative agency, its findings of fact on review shall be held to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 1998); *Marion Power Shovel Co. v. Department of Revenue*, 42 Ill. 2d 13, 17, 244 N.E.2d 598, 601 (1969). As a reviewing court, it is not our function to resolve factual inconsistencies or to weigh the evidence and determine where the preponderance of the evidence lies. *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 427-28, 603 N.E.2d 477, 481 (1992), citing *Collura v. Board of Police Commissioners*, 113 Ill. 2d 361, 372-73, 498 N.E.2d 1148, 1153 (1986). We may not interfere with the Board's expertise and authority unless that authority is exercised in an arbitrary and capricious manner. *Murdy v. Edgar*, 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088 (1984).

●2 "Only if, after reviewing the evidence in a light most favorable to the Board, we determine that no rational trier of fact could have reached the conclusion reached by the Board are we able to overturn a decision under this standard." *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508, 514, 607 N.E.2d 182, 185 (1992). Broad discretion is accorded an administrative agency in determining what constitutes a proper cause for suspension, but it is essential to the validity of such suspension that it be based upon substantial misconduct or incapacity. *Zinser v. Board of Fire & Police Commissioners*, 28 Ill. App. 2d 435, 439, 172 N.E.2d 33, 34 (1961). The concept of misconduct must be rooted in substantial shortcomings and does not include conduct which is so trivial as to be unreasonable and arbitrary. *Hruby v. Board of Fire & Police Commissioners*, 22 Ill. App. 3d 445, 453, 318 N.E.2d 132, 138 (1974). Given our limited power of review, we cannot say that the police board's decision was against the manifest weight of the evidence.

Plaintiff first argues that the Board's findings that plaintiff failed to answer questions presented to him by Sergeant Rowan was against the manifest weight of the evidence because she failed to follow the procedures for questioning outlined under the form called the "Administrative Proceedings Rights." According to this document, once an officer is asked a question and refuses to answer, he must be ordered by the superior officer to answer the question before he can be charged with misconduct. Plaintiff asserts that during his questioning, Sergeant Rowan never gave him the requisite order to answer before attempting to discipline him.

●3 The Board responds that this argument has been waived because it was never raised before the Board. It further argues that, waiver aside, the sergeant's failure to give this directive is harmless

error at best due to plaintiff's awareness of his obligations as a police officer. We find this issue waived for purposes of appeal.

"The waiver rule specifically requires first raising the issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts." *Smith v. Department of Professional Regulation*, 202 Ill. App. 3d 279, 287, 559 N.E.2d 884, 889 (1990). Plaintiff's attempts to raise the issue for the first time in the circuit court does render the waiver rule inoperable. See *Caauwe v. Police Board*, 216 Ill. App. 3d 313, 317, 576 N.E.2d 1078, 1081 (1991), citing *Smith*, 202 Ill. App. 3d at 287, 559 N.E.2d at 889 (plaintiff's argument that he preserved the issue by raising it in the circuit court is meritless).

Additionally, plaintiff has failed to file a reply brief, thereby failing to address the arguments raised by the superintendent and the Board on the issue of waiver. "While a reply brief is not required under the rules of the court, it is helpful in that it enables the reviewing court to have before it a full and complete presentation of all material questions of law and fact involved in the case." *Investors Commercial Corp. v. Metcalf*, 13 Ill. App. 2d 99, 105, 140 N.E.2d 924, 927 (1957).

Even if we were to address this issue, we would reach the determination that a rational trier of fact could have reached the conclusion reached by the Board. The Board's determination that plaintiff had violated the police department's rules was not only based upon his interview with Sergeant Rowan but also upon his violation of Rule 2 for failing to notify the department of information received from Evans regarding his illegal activities and for proffering "incredible" testimony to the United States District Court. He was charged in violation of Rule 3 for failing to cooperate with Sergeant Rowan *and* for failing to report information of Evans' illegal conduct to the department, for giving unbelievable testimony in the United States District Court and for engaging in secondary employment in representing Evans in a criminal matter. Rule 6 was violated by plaintiff's failure to answer Sergeant Rowan's questions *and* for representing Evans in a criminal matter. Finally, plaintiff was found in violation of Rule 21 for his failure to report Evans' illegal activity. Therefore, even if waiver did not apply, the record indicates that the Board considered everything that was presented to it during the hearing, including Rowan's interview report. As such, plaintiff's assertion that Rowan's failure to order him to answer questions during her interview rendered the Board's findings against the manifest weight of the evidence is without merit.

•4 Plaintiff also argues that the Board's finding that he failed to cooperate with Agent Karmik, in violation of Rule 2; that his alleged failure to notify the department of information he received from Ev-

ans regarding his criminal activities, in violation of Rules 2, 3 and 21; and that he committed misconduct based upon the United States District Court's evaluation of his testimony, in violation of Rules 2 and 3, are all against the manifest weight of the evidence.

Once again, in making its determination, the Board considered plaintiff's involvement in Evans' case in its entirety.

The underlying principles of the Board regarding secondary employment is at the core of these violations. The department's general order No. 89—8 specifically prohibits department members from engaging in secondary employment which "would result at any time in a conflict of interest" between the duties and responsibilities owed to the department and the responsibilities owed to the secondary employer. In addition, and more importantly, this order prevents police officers who are also attorneys from representing individuals who are targets of *criminal investigations*, no matter who that individual may be. Although the facts are conflicting as to whether plaintiff was really representing Evans, plaintiff continually asserts that he did represent him. He maintains that this was not a violation of the departmental rules, however, because when he did represent Evans, he had not yet been charged or indicted for any crime. Plaintiff admits, however, that as early as January 5, 1996, he was aware that Evans was being *investigated* for possible bribery charges in the Operation Silver Shovel corruption probe. He also admits, in his own testimony, that he knows that bribery is a *crime*. Given this information, it was not unreasonable for the Board to determine that plaintiff's asserted representation of Evans created a conflict of interest in derogation of his primary responsibility to the Chicago police department.

Throughout the entire investigation, plaintiff continually asserted attorney-client privilege when asked questions concerning his conversations with Evans. Before the Board, the superintendent argued this attorney-client privilege never existed because the manifest weight of the evidence showed that the privilege had been waived. Plaintiff argued that it did exist because he continually represented Evans up until the point that attorney Monico was appointed to represent Evans, which was on January 8, 1996, and that that privilege was never waived because Evans, the only person who could waive the attorney-client privilege, never did so. However, once again, it is not our function to resolve factual inconsistencies or to reweigh the evidence and determine where the preponderance of the evidence lies. *Launius*, 151 Ill. 2d at 427-28, 603 N.E.2d at 481. We must take the findings of the Board as *prima facie* correct and true.

We do find, however, that whether an attorney-client privilege exists is of no consequence to the Board's determination of whether

plaintiff violated the department's rules. It is true that if in fact an attorney-client relationship existed, plaintiff's assessment that he was caught in a "catch-22" is correct. However, as previously stated, this "catch-22" should have never occurred. The record is clear that plaintiff became a police officer *prior to* becoming an attorney. The general order No. 89—8 concerning secondary employment clearly states in pertinent part:

"III. Policy

1. The Chicago Police Department has the right to restrict secondary employment for good cause. *The duties and obligations of the Chicago Police Department take priority over any other employment.* Department members who engage in secondary employment are reminded that their primary responsibility is to the Chicago Police Department \*\*\*.

\* \* \*

2. *Any conflict of interest will be resolved in favor of the Chicago Police Department.*" (Emphasis added.) Chicago Police Department General Order No. 89—8 (eff. August 16, 1989).

By swearing to abide by the orders and rules of the Chicago police department, plaintiff agreed that the police department would be his primary employer. Therefore, any employment taken on subsequent to his taking this oath obviously became secondary.

Based upon the department's general order, the rules of the department and the circumstances surrounding this case, we cannot say that the Board's determination that plaintiff's failure to cooperate with Agent Karmik, failure to notify the department of information he received and his continued refusal to answer questions relying on attorney-client privilege was arbitrary, unreasonable or against the manifest weight of the evidence.

Plaintiff's insistence that he "did what any good lawyer should do" by not turning his back on a client, although well intentioned, does not mandate reversal of the Board's decision.

We find that the Board's decision to suspend plaintiff for a year without pay was not against the manifest weight of the evidence. "[I]f an administrative agency's determination is not arbitrary or unreasonable, and does not involve the imposition of discipline unrelated to the needs of service, it will stand even if this court considers another sanction more appropriate." *Kloss v. Board of Fire & Police Commissioners*, 96 Ill. 2d 252, 258 (1983), citing *Sutton v. Civil Service Comm'n*, 91 Ill. 2d 404, 411, 438 N.E.2d 147, 150-51 (1982).

Based upon the foregoing, we confirm the Board's decision.

Confirmed.

HARTMAN, P.J., and HOFFMAN, J., concur.