2022 IL App (1st) 220712-U

FIFTH DIVISION
June 1, 2022

No. 1-22-0712

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ROLAND POLANCO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| COOK COUNTY OFFICERS | ) | No. 22 COEL 7 |
| ELECTORAL BOARD, and its members, KAREN | ) | |
| YARBROUGH, Cook County Clerk; KIMBERLY | ) | |
| FOXX, Cook County State's Attorney; and IRIS | ) | |
| MARTINEZ, Clerk of the Circuit Court of Cook | ) | |
| County; and LARRY DOMINICK, | ) | Honorable |
| | ) | Maureen O. Hannon, |
| Respondents-Appellees. | ) | Judge, Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held:*    We affirm the circuit court's order affirming the decision of the Cook County Officers Electoral Board, which had dismissed objections to the nomination papers of a candidate for the office of Township Committeeperson, Democratic Party, of Cicero Township for the 2022 General Primary Election. The objections were insufficiently specific to provide the candidate sufficient notice of the nature of the objections as required by the Election Code. The objector procedurally defaulted his other claims by failing to raise them in a timely manner.

¶ 2                                    BACKGROUND

¶ 3      The petitioner-appellant, Roland Polanco, appeals from an order of the circuit court which affirmed a decision of the respondent-appellee Cook County Officers Electoral Board (Board). The Board had overruled Polanco's objections to the nomination papers of respondent-appellee Larry Dominick, a candidate in the upcoming June 28, 2022 General Primary Election. In light of this determination, the circuit court also declined to reach Polanco's other claims regarding the composition of the electoral board. We affirm the judgment of the circuit court.

¶ 4                                        FACTS

¶ 5      Dominick filed nomination papers with the Cook County Clerk, seeking to be placed on the ballot for election to the office of Township Committeeperson, Democratic Party, Cicero Township.   His nominating papers included petition sheets containing approximately 279 signatures of individuals purporting to be registered voters residing in the township, affiliated with the Democratic Party.

¶ 6      Polanco filed objections to those nomination papers.  The only substantive allegation in the objections reads:

> "Candidate has submitted a number of signatures less than the statutory minimum number of signatures as required by the Election Code per 10 ILCS 5/7-10(i).  Therefore, Candidate has failed to comply with a mandatory provision of the Illinois Election Code (*Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929). Thus, by the law of the State of Illinois, the name of Candidate is not eligible to appear on the ballot for the Office at the Election."

¶ 7      The Board assigned the case to a hearing officer. Dominick moved to dismiss the objections on the basis that, by merely stating he filed fewer signatures than required, they were

insufficiently specific to provide him notice of what he would have to defend against. He further noted that the objections failed to indicate either how many signatures he had filed or what the statutorily required number of the signatures was. Since, in Dominick's view, the law required him to submit between 175 to 280 valid signatures, and the petitions had 279 signatures on their face, he contended that the objections failed to fulfill the requirement of section 10-8 of the Election Code (Code) that the objector's petition state "fully the nature of the objections." Pub. Act 102-15, § 5 (eff. June 17, 2021) (amending 10 ILCS 5/10-8).

¶ 8    In response to Dominick's motion to dismiss, Polanco revealed his actual theory of the case for the first time. Polanco asserted that the number of required signatures was 540, not between 175 and 280. He based this computation on the following analysis. Section 7-10(i) of the Code provided that the minimum number of petition signatures for candidates for township committeeperson was "no less than the number of signatures equal to 5% of the primary electors of his or her party of the township." Pub. Act 102-692, § 5 (eff. Jan. 7, 2022) (amending 10 ILCS 5/7-10). Section 7-10(k), in turn, specified that the number of "primary electors" in a township "shall be determined by taking the total vote cast for the candidate for that political party who received the highest number of votes in the political subdivision at the last regular election at which an officer was regularly scheduled to be elected from that subdivision." *Id.*

¶ 9    In Polanco's view, the "last regular election at which an officer was regularly scheduled to be elected from" Cicero Township was the November 2020 General Election, even though there was no Cicero Township office on the ballot at that election. That election was the quadrennial presidential election. Polanco argued that since all Cicero voters participated in that election, it was proper to use that election as the base year for computing the signature requirement. Polanco showed that the highest Democratic vote-getter in Cicero Township in the

November 2020 General Election was Justice P. Scott Neville, a candidate for the Illinois Supreme Court who was running, not merely in Cicero Township, but in the First Judicial District, which happens to encompass Cicero Township. Justice Neville received 16,127 votes in Cicero Township, which, multiplied by 5% then further multiplied by two-thirds[1], resulted in a 540 minimum signature requirement.

¶ 10 The hearing officer granted Dominick's motion to dismiss, finding that Polanco's petition did not "state fully" the objections as required by section 10-8 of the Code. In particular, the hearing officer's written report and recommendation stated that Polanco's analysis regarding the higher signature requirement was raised for the first time in the briefing on the motion to dismiss and, among other things, violated the Board's rule prohibiting amendments to filed objections. The hearing officer also stated that Polanco's objections had pleaded no "basis" for his assertion that the candidate failed to submit the required number of signatures. Accordingly, the hearing officer recommended that the objections be dismissed.

¶ 11 The Board received the hearing officer's report and recommendation, and heard further arguments from the parties. During the hearing, the parties stipulated that the Cook County Clerk's published computations showed the minimum signature requirement was 280. The record shows that the County Clerk did not base its computation on Justice Neville's vote totals at the November 2020 General Election, an election at which no Cicero Township officers were elected. Instead, the County Clerk used 2018 General Primary Election, the last preceding election at which Cicero Township voted as a distinct unit for any Democratic candidate to serve in a township office.

---

[1] Under Public Act 102-15, the normal signature requirements for Township Committeeperson in the Code were reduced by one-third for the 2022 election only. See Pub. Act 102-15, § 5 (eff. June 17, 2021) (amending 10 ILCS 5/2A-1.1(b)).

4

¶ 12 Board members discussed whether the Board should resolve the case based on the lack of specificity or the candidate's compliance with the published signature requirement. The State's Attorney's designee on the Board, assistant State's Attorney Jessica Scheller, moved:

> "to affirm the conclusion of the hearing officer but on an alternate basis having resolved the substantive merits of the objection as filed in that Mr. Polanco alleged that candidate Dominick did not meet the signature requirement, but all parties stipulate those requirements were between 175 and 280, and the candidate filed 279 signatures. We would not move to the second part of the Objector's—the Petitioner's objection—excuse me—because it was not properly raised in the papers, and therefore the objection would be overruled and Candidate Dominick's name would appear on the ballot."

The Board adopted Scheller's motion by unanimous vote. Apparently, the Board had a pre-drafted written order before it which did not precisely track Scheller's motion. Accordingly, the Board agreed to amend the order to state "as amended on the record." The Board's legal counsel clarified: "so that would be part of the order." As a result, the Board's typed written order states that it adopted the recommendation of its hearing officer in that Polanco's petition "failed to specify the nature of the objections," but it also contains a handwritten amendment reading "as amended on the record."

¶ 13 At no time during the Board's proceedings did Polanco file or orally present any argument whatsoever relating to the Board composition, or the alleged bias of any Board member or their staff.

¶ 14 Polanco then filed a lawsuit in the circuit court. The lawsuit contained two counts. Count I was a standard petition for judicial review of an electoral board decision. See 10 ILCS 5/10-10.1 (West 2020). It alleged that, by dismissing the case for lack of specificity, the Board never

actually computed the correct applicable signature requirement using Polanco's methodology, that is, that the signature requirement was 5% of the vote received by Justice Neville in the November 2020 General Election. In Count I, Polanco requested reversal of the Board's decision and removal of Dominick from the ballot. In Count II, entitled "Electoral Board Bias Created Due Process Violation," Polanco alleged that County Clerk Yarbrough was biased. In support, Polanco reasoned that because Yarbrough was a candidate in the June 2022 General Primary Election for Township Committeeperson of Proviso Township, she could benefit from a favorable decision in the Dominick case because her petitions relied on the lower number published by her office, and those petitions did not contain enough signatures under Polanco's methodology.

¶ 15    He also alleged that Yarbrough's conflict extended to the Board's attorney, who was an employee of the Cook County Clerk's office. Finally, he stated that the Board's "refusal" to "appoint a public member" to replace Yarbrough and to obtain alternate legal counsel violated Polanco's right to due process of law. Polanco requested the relief that the Board's decision be "vacated and reversed" [sic], and that the objections be remanded to an electoral board consisting of different members and advised by a different attorney.

¶ 16    Yarbrough filed an answer to the petition for judicial review consisting of the administrative record of the Board as required by section 10-10.1 of the Code (10 ILCS 5/10-10.1 (West 2020). This record shows that Yarbrough and Dominick accurately asserted that Polanco failed to raise any objection regarding the Board composition.

¶ 17    Yarbrough also moved to strike the portion of the complaint regarding the Board composition. In her motion, Yarbrough stated that she took no position on the merits of the objections vis-à-vis Dominick and Polanco, but that the allegations regarding her and her legal

counsel should be stricken because they were false. Yarbrough claimed that at no time during the proceedings did the Board "refuse" to do anything regarding its membership, because Polanco never raised the issue of a potential due process violation to the Board, and first raised it in Count II of the petition for judicial review of the Board's decision. Further, Yarbrough stated that she and her legal counsel had recused themselves from participation on various cases involving the position of Proviso Township Democratic Committeeperson upon advice of outside counsel. She supported these assertions with a copy of the transcript of a hearing on those objections, showing that a representative of the Cook County Treasurer sat in Yarbrough's place. See 10 ILCS 5/10-9 (West 2020) (providing that the county treasurer replaces the county clerk on a county officers electoral board when the clerk is a candidate in the subject race).

¶ 18    Dominick also moved to strike the due process allegations in the petition for judicial review, agreeing with Yarbrough that "at no time" did Polanco raise the issue of Yarbrough's participation before the Board either orally or in writing. Accordingly, Dominick requested that Count II be stricken on the basis of forfeiture, and further argued the doctrine of *laches* barred the claim.

¶ 19    Polanco filed a memorandum in support of his petition, arguing that he sufficiently pleaded his objections as required by section 10-8 of the Code, and that his signature computation methodology was correct. He also argued that he had not waived his due process contentions because a waiver requires a "knowing, voluntary, and intentional" act by the waiving party. He claimed—without any further explanation—that the due process violations were "not apparent" to him during the course of the Board proceedings. He also argued that his due process argument was "not waivable," and that since the State's Attorney represented the Cook County

7

Clerk in various pending lawsuits relating to the clerk's official functions, the clerk's disqualification should also extend to the State's Attorney.

¶ 20    After briefing and argument, the circuit court entered an order disposing of both counts of Polanco's lawsuit. The court found that: (1) "all parties agree" that Polanco never asked any Board member or attorney to be recused in the proceedings below; (2) the Board's rules did not allow amendments to objections; (3) the objections did not set forth any allegation or computation regarding the number of signatures filed or required; (4) the objections "provided no way for the Board to determine the basis for the objection and no way for the Candidate to effectively respond"; (5) "the fact that a candidate is not required to answer the objection supports the notion that all parties expect the pleading to clearly inform the candidate of the nature of the objection for due process but also to alleviate confusion and move the proceedings"; (6) the bare allegation that Dominick failed to file enough valid signatures was insufficient to apprise any Board member of the need to recuse; (7) the allegations raised in certain paragraphs of Count I relating to the Proviso Township objections, and Count II in its entirety, were not raised before the Board; (8) the Board's and Dominick's motions to strike were moot; and (9) the Board's decision was affirmed. The court also found there was no just reason to delay enforcement or appeal of its order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), a finding which was technically unnecessary because the circuit court's order impliedly disposed of both counts of the lawsuit.

¶ 21    This appeal followed. This court granted Polanco's motion for an accelerated docket pursuant to Illinois Supreme Court Rule 311(b) (eff. July 1, 2018)).

¶ 22                                     ANALYSIS

¶ 23     On appeal, Polanco asserts the following contentions of error: (1) the Board should not have dismissed his objections because he pleaded them with sufficient specificity as required by section 10-8 of the Code; (2) under *Ramirez v. Chicago Board of Election Commissioners*, 2020 IL App (1st) 200240, the base year for computing the signature requirement was 2020, not 2018; and (3) the Board's composition denied him his right to due process of law.

¶ 24     We address the last contention first. Polanco argues that the circuit court erred by not granting relief with respect to his argument that the Board was improperly constituted and was biased against him. "[I]t is indeed a well-settled principle of law that concepts of due process apply to administrative hearings, and the parties are guaranteed the right to a fair and impartial tribunal." *Girot v. Keith*, 212 Ill. 2d 372, 380 (2004) (reversing decision of electoral board which refused to grant a motion to disqualify a member who was a material witness), citing *Anderson v. McHenry Township*, 289 Ill. App. 3d 830, 832; *Sindermann v. Civil Service Commission*, 275 Ill. App. 3d 917, 923 (1995); *Collura v. Board of Police Commissioners*, 113 Ill. 2d 361, 369 (1986).

¶ 25     Due process is of paramount importance in our judicial system, particularly when dealing with public elections and the right to vote. However, parties can forfeit even constitutional claims by failing to raise them promptly. *Carpetland U.S.A., Inc. v. Illinois Department. of Employment Security*, 201 Ill. 2d 351, 396-97 (2002). We find that Polanco has forfeited this contention by failing to raise it in a timely manner. In so holding, we are bound by our supreme court, which has explained in the context of a ballot access case:

          "It is quite established that if an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first

time before the circuit court on administrative review. The rule of procedural default in judicial proceedings applies to administrative determinations, so as to preclude judicial review of issues that were not raised in the administrative proceedings. The rule is based on the demands of orderly procedure and the justice of holding a party to the results of his or her conduct where to do otherwise would surprise the opponent and deprive the opponent of an opportunity to contest an issue in the tribunal that is supposed to decide it. Additionally, raising an issue for the first time in the circuit court on administrative review is insufficient. The rule of procedural default specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts. Given that in administrative review cases the circuit courts act as the first-tier courts of review, the reason and logic behind that requirement are clear." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212-13 (2008) (internal citations omitted).

¶ 26 We find further support for forfeiture in the extensive procedure which the Cook County Circuit Court has established to promptly resolve electoral board membership dispute. Cook County Circuit Court General Order 21 specifically addresses the right of an election litigant to seek relief regarding an elector's board membership, and provides an avenue to resolve those claims on an expedited basis before the Board even convenes. Cook County Cir. Ct. G.O. 21 (eff. Feb. 1, 2005); *Zurek v. Franklin Park Officers Electoral Board*, 2014 IL App (1st) 142618, ¶¶ 77-81. (noting that the general order can be interpreted as providing an avenue to remove electoral board members for reasons not specified in the Code, and that the circuit court adopted it pursuant to section 10-9 of the Code). Polanco did not avail himself of this avenue of relief

before filing his objections, before the Board met, or at any time during the course of the Board's hearings.

¶ 27    The rule enunciated in *Cinkus* applies equally to issues involving constitutional due process rights (*Smith v. Department of Professional Regulation*, 202 Ill. App. 3d 279, 287 (1990)), even though an administrative agency does not have the authority to declare a statute unconstitutional or question its validity. *Cinkus*, 228 Ill. 2d at 214. Administrative review, or its functional equivalent, judicial review of an electoral board's decision, is confined to the evidence offered before the Board. *Id.* By asserting a due process challenged on the record before the administrative agency, a party avoids piecemeal litigation and fully allows opposing parties to refute the constitutional challenge. *Id.* Since Polanco did not timely raise any argument regarding the Board's composition, the potential bias of certain Board members, or Board staff members, he procedurally defaulted those contentions and they are forfeited. *Id.* at 212–13; see also *Girot*, 212 Ill. 2d at 377-78 (recognizing ability of electoral board to consider disqualification of one of its members even though not disqualified under the statutory criterion of being a candidate for the same office as provided by section 10-9 of the Code).

¶ 28    That brings us to the merits of the Board's decision. On appeal from an order of the circuit court affirming a decision of the Board, we review the Board's decision, not the decision of the circuit court. *Burns v. Municipal Officers Electoral Board of Village of Elk Grove Village*, 2020 IL 125714, ¶ 10. Our standards of review of the Board's decision mirror those applicable to review of an administrative agency decision. *Cinkus*, 228 Ill. 2d at 209-10 (2008). The Board essentially dismissed the objections for failing to state a valid claim under section 10-8 of the Code. To determine the applicable standard for our review, we analogize to the standards applicable to dismissal of complaints under section 2-615 of the Code of Civil Procedure (735

11

ILCS 5/2-615 (West 2020)). It is well established that whether a complaint states a valid claim presents a question of law. *Douglas Theater Corp. v. Chicago Title & Tr. Co.*, 288 Ill. App. 3d 880, 883 (1997). Where, as here, the issue presented is one of law, our review is de novo. *Id.*

¶ 29 An electoral board is a creature of statute and its authority is derived from its enabling legislation. *Delay v. Board of Election Commissioners of City of Chicago*, 312 Ill. App. 3d 206, 209 (2000) (citing *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68 (1988)). Section 10-8 of the Code states in pertinent part: "The objector's petition shall give the objector's name and residence address, and shall state fully the nature of the objections to the certificate of nomination or nomination papers or petitions in question, and shall state the interest of the objector and shall state what relief is requested of the electoral board." Pub. Act 102-15, § 5 (eff. June 17, 2021) (amending 10 ILCS 5/10-8). The Code does not allow parties to file amendments to their objections and does not authorize an electoral board to raise *sua sponte* objections to nominating petitions. *Delay*, 312 Ill. App. 3d at 210 (citing *Reyes v. Bloomingdale Township Electoral Board*, 265 Ill. App. 3d 69, 72 (1994)). Additionally, the Code does not specifically address the degree of precision required to satisfy section 10-8. *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 457 (2008).

¶ 30 Polanco's entire case revolves around an esoteric issue: whether the correct base year for determining the signature requirement for candidates for township committeeperson is: (1) the immediately preceding General Election, because all of the voters of the township would have necessarily voted for some party candidate in that election; (2) the election for Township Committeeperson held at the General Primary Election four years earlier, because the township did not vote as a unit for any officer to serve that unit since then; or (3) the election for township officers held at the Consolidated Election one year earlier, because candidates of that party ran

for township offices (such as township supervisor) in that year. The first method, Polanco argues, is required by the holding in *Ramirez*, in which this court found that the correct base year for computing the signature requirements for Chicago ward committeepersons was the previous year's general election even though no officers were elected at that election strictly to serve the ward. *Ramirez*, 2020 IL App (1st) 200240, ¶¶ 24-33.

¶ 31    Since Polanco's theory of the case was entirely based on such a nuanced analysis of the election cycle and township voting history, we cannot say that Polanco's bare-bone objection, compressed into a single opaque sentence, provided *anyone*, whether the candidate, the Board, or the public, with even the slightest scintilla of fair notice of the "nature" of his objections, much less one which "fully" described them. See Pub. Act 102-15, § 5 (eff. June 17, 2021) (amending 10 ILCS 5/10-8) (requiring that the objector's petition "shall state fully the nature of the objections"). This is particularly true because the Cook County Clerk had published her own non-binding computations, using the second and third above-described methodologies, upon which many candidates undoubtedly relied. Polanco's objections were the legal equivalent of filing a tort lawsuit saying merely that "the defendant committed a tortious act upon me and thus owes me damages," without describing the nature, time, or place of the tortious act.

¶ 32    Again, we analogize to case law regarding pleading standards in common law complaints. "Illinois is a fact-pleading jurisdiction." *Doe v. Coe*, 2019 IL 123521, ¶ 32. Accordingly, while the plaintiff is not required to set forth evidence in the complaint, he "must allege facts sufficient to bring a claim within a legally recognized cause of action, not simply conclusions." (Internal citations omitted.) *Marshall v. Burger King Corporation*, 222 Ill. 2d 422, 429-30 (2006). Here, Polanco pleaded the bare conclusion that Dominick failed to submit enough valid signatures required under the Code. However, Polanco failed to explain *why* the

signatures fell under the required number, something which at least required factual allegations regarding the allegedly correct computational base year, identification of which Democratic candidate received the most votes in the township at that supposedly applicable base year election, and a numerical comparison of the resulting minimum signature requirement to the apparent number of signatures in the candidate's nomination papers.

¶ 33 "We are mindful of the need to tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice." *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997) (citing *Tully v. Edgar*, 171 Ill. 2d 297, 307 (1996)). In light of the extremely expedited nature of ballot access challenges, the need to put the candidate on fair notice at an early date is especially important, so that he can prepare a defense. We therefore affirm the Board's order dismissing the objections.

¶ 34 We express no opinion on whether the Cook County Clerk's published signature computation methodology for township committeeperson comports with the recent authority of *Ramirez*. In light of the confusion regarding the correct requirement as shown both in the record before us and also in cases such as *Corbin v. Schroeder*, 2021 IL 127052 (involving the computation of signature requirements for village officers), we recommend that the General Assembly clarify the signature requirements for this office.

¶ 35                                   CONCLUSION

¶ 36 The Board correctly dismissed Polanco's objections. We affirm the judgment of the circuit court, which affirmed the Board's decision and dismissed count II of the complaint. The mandate shall issue *instanter*.

¶ 37 Affirmed.